In the Matter of Edward Claren **DAVIS, and Mary Esther Davis, Debtors.**

**Bankruptcy No. B85–01073–Y.**

United States Bankruptcy Court, N.D. Ohio.

May 29, 1987.

William A. Gemma, Youngstown, Ohio, for debtors.

Michael A. Gallo, Youngstown, Ohio, trustee.

Jeffrey B. Duber, Asst. Atty. Gen., Office of Atty. Gen. of Ohio, Employment Services Section, Cleveland, Ohio, for State of Ohio.

## MEMORANDUM OPINION

WILLIAM T. BODOH, Bankruptcy Judge.

This cause is before the Court on the Court's Order that the STATE OF OHIO,

DEPARTMENT OF LIQUOR CONTROL ("DEPARTMENT OF LIQUOR CONTROL"), appear and show cause why it should not be found in violation of the automatic stay provisions of 11 U.S.C. Sec. 362. Hearings on this matter were held on September 18, 1986 and September 24, 1986, at which time both Debtors and representatives of the DEPARTMENT OF LIQUOR CONTROL appeared with counsel. Based upon the testimony and documentary evidence introduced at hearing, the Court finds:

1. Debtors, EDWARD and MARY DAVIS, dba ED'S OTHER PLACE LOUNGE, filed a Petition for Relief under Chapter 13 of the Bankruptcy Code on November 14, 1985. THE STATE OF OHIO DEPARTMENT OF TAXATION was listed as a creditor for sales tax owed in the amount of Four Thousand, One Hundred Forty & 00/100 Dollars ($4,140.00).

2. Prior to the filing of the Chapter 13 Petition, THE STATE OF OHIO LIQUOR CONTROL COMMISSION issued an Order suspending Debtors' liquor permits indefinitely, effective December 20, 1985, until such time as certain unpaid sales taxes, in the total amount of Six Thousand, Two Hundred Ten & 00/100 Dollars ($6,210.00) were paid in full and the suspension order set aside by subsequent Order of the Commission. (STATE's Exhibit 1). This Order was apparently mailed to Debtors on September 6, 1985.

3. In January, 1986, THE DEPARTMENT OF LIQUOR CONTROL, ENFORCEMENT DIVISION, received a request from THE STATE OF OHIO's Attorney General's Office to investigate Debtors' place of business for a violation of operating while under the tax suspension as set forth in the Commission's Order of September 6, 1985. (Record 1 at 75). On January 14, 1986, three enforcement agents went to Debtors' place of business. While there, they observed a video machine called "Castle," and subsequently charged Debtor, EDWARD DAVIS, with the possession of a gambling de-vice. At this time, they also charged Debtor with selling and keeping beer upon the permit premises while the permit was under a tax suspension and not in force. The enforcement agents did not remove any inventory from Debtors' place of business but merely instructed Debtors not to sell any beer or liquor. During this investigation, the enforcement officers were informed that Debtors were in a Chapter 13 case. (Record 1 at 10; Record 2 at 38–39).

4. On April 10, 1986, Debtors appeared before a hearing officer for THE OHIO LIQUOR CONTROL COMMISSION on the charges of keeping and selling beer while under a tax suspension and possession of a gambling device. Debtor, EDWARD DAVIS, testified that, while at this hearing, he informed the hearing officer and an assistant attorney general that he had filed a Petition for Relief under Chapter 13 of the Bankruptcy Code. (Record 1 at 12–15; Record 2 at 43–44).

5. On May 22, 1986, THE OHIO LIQUOR CONTROL COMMISSION issued an Order relative to the charges heard on April 10, 1986. (Debtors' Exhibit B). The Order sets forth that Debtor had denied the gambling charges and further set forth that the Commission was dismissing the charges of operating while under a tax suspension. However, despite the dismissal of the latter charges, the Order reads:

Said indefinite suspension given in Case Number 1096–ST–85 [the tax case] will continue in effect and if the stated delinquencies in Case Number 1096–ST–85 are not paid in full by noon, June 21, 1986, said permits are revoked.

6. On September 10, 1986, agents from the DEPARTMENT OF LIQUOR CONTROL, ENFORCEMENT DIVISION, entered Debtors' place of business with a warrant to search and seize all beer, wine and intoxicating liquor and items relating to the sale of intoxicating beverages. Debtor testi-

fied that, during this search, he and his employee, Wanda Shobel, informed Investigators Akins and Quicksall that he had filed for relief under the Bankruptcy Code and that he was in a Chapter 13 (Record 1 at 19–20). Ms. Shobel testified that she showed Investigator Quicksall a copy of the bankruptcy notice, but Ms. Quicksall denies seeing any such notice (Record 2 at 22–24). Based upon the totality of circumstances reflected in the record and based upon the Court's observation of the demeanor of Ms. Quicksall as a witness, her testimony with respect to lack of notice or knowledge of the pendancy of Debtors' Chapter 13 case cannot be credited. The Court concludes that a copy of the bankruptcy notice was indeed shown to one or more of the agents of the ENFORCEMENT DIVISION during the search on September 10, 1986.

7. During the investigation, the agents listed the inventory and removed it from the premises. The agents also removed from the walls some of the mirrors which were advertisements for beer. Debtor EDWARD DAVIS testified that one of the mirrors was dragged across the bar and a table, resulting in damage. However, no evidence was presented as to the amount of monetary damage to the table and the bar. The agents denied that there was any damage to the premises. They did testify, however, that the bottom half of a plastic advertisement had been accidentally broken.

8. After the investigation had been completed and the inventory had been counted and listed on the search warrant and removed from the premises, the inventory was taken by van to the DIVISION headquarters in Akron, Ohio. Since there was no evidence investigator to take in and mark the evidence at that time, the inventory remained in the van, which was locked and backed against a cement wall.

9. On September 11, 1986, Debtor filed an Application with this Court for an Order directing THE DEPARTMENT OF LIQUOR CONTROL to appear and show cause why they should not be held in violation of 11 U.S.C. Sec. 362, which Application was granted on September 15, 1986.

10. On September 16, 1986, the inventory was returned. Upon a count conducted by both Debtor and the investigator returning the inventory, it was found that the count on the canned beer was 289 cans less than the amount which had been listed on the inventory prepared by Division agents. Debtor testified that he had paid Nine & 90/100 Dollars ($9.90) per case (24 cans) for the beer. Debtor signed a receipt for the inventory and noted the difference in the canned beer. There were no other discrepancies.

11. Debtor claims that he missed four days of work at his regular employment with General Motors Corporation as a result of the action taken by THE DEPARTMENT OF LIQUOR CONTROL, for a total of Five Hundred & 00/100 Dollars ($500.00) in lost wages. In addition, Debtor estimates that he experienced lost profits in the amount of Six Hundred Nineteen & 23/100 Dollars ($619.23), the estimate being based upon interpretation of historic sales data of Debtor. Finally, Debtor prays for an award of attorney's fees which were incurred as a result of the actions of THE DEPARTMENT OF LIQUOR CONTROL. According to the testimony of WILLIAM GEMMA, ESQ., counsel for Debtors in this cause, at least 20.9 hours were spent in the prosecution of this cause.

12. According to the testimony of Connie Hammus, a secretary-clerk for THE STATE OF OHIO LIQUOR CONTROL COMMISSION, no notice of the bankruptcy filing was ever received by THE LIQUOR CONTROL COMMISSION from the Clerk of this Court. However, it is beyond dispute that through this Court's automated noticing system, notice of the filing was sent to the OHIO DEPARTMENT OF TAXATION, the office or agency

wherein Debtors' sales tax problems originated. In addition, the Court finds that unofficial notice of the Chapter 13 proceeding was given by Debtor EDWARD DAVIS to an agent of THE LIQUOR CONTROL COMMISSION; i.e., the hearing officer, on April 10, 1986, to a representative of THE OHIO ATTORNEY GENERAL'S OFFICE on April 10, 1986, and to the investigating agents of the DEPARTMENT OF LIQUOR CONTROL, ENFORCEMENT DIVISION, on January 14, 1986, and September 10, 1986.

### LAW

11 U.S.C. Sec. 362(a) provides in pertinent part:

a) except as provided in Subsection (b) of this section, a petition filed under Sec. 301, 302, or 303 of this Title, ... operates as a stay, applicable to all entities, of—

1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this Title, or to recover a claim against the debtor that arose before the commencement of the case under this Title;

2) the enforcement, against the debtor or against the property of the estate, of a judgment obtained before the commencement of the case under this Title;

3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

.     .     .     .     .

6) any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case under this Title....

Under 11 U.S.C. Sec. 362, the filing of a bankruptcy petition stays all judicial and other proceedings and actions to recover debts owed any creditor by the debtor. This general provision contains several listed exceptions, including 11 U.S.C. Sec. 362(b)(4), which provides:

(b) the filing of a petition under Sec. 301, 302, or 303 of this Title ... does not operate as a stay—

.     .     .     .     .

(4) Under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power....

In construing Sec. 362(b)(4), the courts have determined that "the term 'police or regulatory power' refers to the enforcement of state laws affecting health, welfare, morals, and safety, but not regulatory laws that directly conflict with the control of the *res* or property by the bankruptcy court." *State of Missouri v. United States Bankruptcy Court*, 647 F.2d 768, 776 (8th Cir.1981).

In the instant case, the DEPARTMENT OF LIQUOR CONTROL argues that its actions did not violate the automatic stay since the actions were taken in connection with its "police power" and thus fall under the exception as set forth in Sec. 362(b)(4). In support of its argument, it asserts that the investigation of January 14, 1986 was the direct result of Debtors' maintaining a gambling device on the permit premises rather than as a result of Debtors' failure to pay sales taxes. The record simply does not support this assertion. The January 14, 1986 investigation was prompted by Debtor's sales tax delinquency and was a post-Petition effort at collection of a scheduled debt.

As hereinbefore noted, Debtors' Exhibit B is a copy of the May 22, 1986 Order wherein the LIQUOR CONTROL COMMISSION found Debtor to be in violation of certain regulations regarding gambling devices. That Order provides first that the sales tax delinquencies were to be paid in full by June 21, 1986 or the liquor permits would be revoked. Further, if the delinquencies were paid in full, the Debtor had the option to either pay a forfeiture in the amount of One Thousand, Four Hundred & 00/100 Dollars ($1,400.00) or serve a four-

teen-day (14–day) suspension beginning at noon, July 21, 1986, and ending at noon, August 4, 1986. If both of the above conditions were not met, the permits were revoked, effective at noon, August 4, 1986.

STATE's Exhibit 3 is a certification letter from the Director of THE DEPARTMENT OF LIQUOR CONTROL, dated August 26, 1986, stating that the Debtors' permit was cancelled on August 4, 1986. The reason for the cancellation is not stated therein. THE STATE relies on these two documents for its assertion that the Debtors' failure to pay sales taxes was disregarded by THE DEPARTMENT and that the September 14 investigation was prompted by THE COMMISSION's Order regarding the gambling device violations.

There are two major flaws in THE STATE's argument. First, the May 22, 1986 Order of THE COMMISSION clearly states that the delinquent sales taxes were to be paid in full by July 21, 1986. This Order was entered by THE COMMISSION after actual notice to an agent of THE COMMISSION; i.e., the hearing officer, that Debtor was in a Chapter 13 proceeding and under the protection of the automatic stay of Sec. 362. The fact that STATE's Exhibit 3 sets forth that the permit was cancelled on August 4, 1986 is of no effect.

■ Secondly, and more importantly, Debtors' problems with THE STATE are the direct result of Debtors' failure to pay sales taxes. On September 6, 1985, THE COMMISSION ordered that effective noon, December 20, 1985, Debtors' permits were to be indefinitely suspended until the sales tax assessments were paid. Debtor filed the Chapter 13 Petition on November 14, 1985, prior to the indefinite suspension taking effect. The automatic stay is effective upon the filing of a petition and formal notice is not required. *In re Schriver*, 46 B.R. 626 (Bankr.N.D.Oh.1985). At the moment of filing, *all* actions to collect any past-due sales taxes from Debtors should have ceased. Despite this requirement of law, in January, 1986, THE DEPARTMENT OF LIQUOR CONTROL, ENFORCEMENT DIVISION, received a request from THE ATTORNEY GENER-

AL'S OFFICE to investigate a violation of Debtor by operating while under a sales tax suspension. The January 1986 investigation resulted in Debtors' being charged with the possession of a gambling device. It is this Court's view that the investigation of January 1986 was a direct violation of the automatic stay and that charges or actions taken as a result of that investigation also violated the automatic stay. Acts taken in violation of the automatic stay are void *ab initio* regardless of whether or not the party so acting had notice of the filing of the bankruptcy petition. *In re Miller*, 22 B.R. 479 (D.Md.1982); *In re Young*, 14 B.R. 809 (Bankr.N.D.Ill.1981). The Court finds that the actions taken by the DEPARTMENT OF LIQUOR CONTROL in January, 1986, and on September 10, 1986, and the Order issued by the LIQUOR CONTROL COMMISSION on May 22, 1986 constitute violations of the automatic stay.

11 U.S.C. Sec. 362(h) provides:

(h) an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.

The term "willful violation" has been construed by the courts as "a deliberate and intentional act done with the knowledge that the act is in violation of the stay." *In re Forty-Eight Insulations, Inc.*, 54 B.R. 905, 909 (Bankr.N.D.Ill.1985).

■ THE DEPARTMENT asserts that its actions were not a "willful" violation of the stay since: (1) there was a "colorable argument that the automatic stay did not enjoin them from so proceeding" and (2) no official notice of the bankruptcy filing had ever been received by THE DEPARTMENT OF LIQUOR CONTROL or THE LIQUOR CONTROL COMMISSION. The Court dismisses as meritless THE DEPARTMENT's first assertion that there was a "colorable argument" that its actions were not in violation of the automatic stay for the reason that every action taken by THE DEPARTMENT against Debtors since January 1986 was the direct result of Debtors' failure to pay pre-Petition sales

taxes outside the Chapter 13 Plan. A state agency should be placed in no better position than any other creditor by an unsupported assertion that its agents believed that they were acting under the auspices of THE STATE's police power. To allow such a result would defeat the whole purpose of our bankruptcy laws; i.e., equality of distribution among the various classes of creditors.

■ THE DEPARTMENT also argues that it should not be found to have willfully violated the automatic stay since it and THE LIQUOR CONTROL COMMISSION did not receive an official notice from this Court that a bankruptcy Petition had been filed by Debtor. The Court likewise finds this argument to be without merit. The OHIO DEPARTMENT OF TAXATION was the entity, office or agency to which Debtors owed a reporting and payment obligation. It was listed as a creditor in the bankruptcy and received notice of the filing through this Court's automated noticing system. It, and not the LIQUOR CONTROL COMMISSION or the DEPARTMENT OF LIQUOR CONTROL, is the creditor in these proceedings. Even if THE DEPARTMENT OF TAXATION had no procedure to alert enforcement and related departments, the Court finds that more than adequate notice was given to THE DEPARTMENT OF LIQUOR CONTROL, THE LIQUOR CONTROL COMMISSION, and THE ATTORNEY GENERAL'S OFFICE by Debtors during the January investigation and negotiations, during the April 10, 1986 hearing before a hearing officer of THE LIQUOR CONTROL COMMISSION, and at the outset of the September 10, 1986 search and seizure. Oral notice to a creditor's agents is sufficient notice of a bankruptcy filing. *In re Bragg*, 56 B.R. 46 (Bankr.D.Ala.1985).

The Court finds that due notice of the bankruptcy was given at least four times to agents of THE DEPARTMENT OF LIQUOR CONTROL and THE LIQUOR CONTROL COMMISSION and that there has been a willful violation of the automatic stay. Therefore, pursuant to 11 U.S.C. Sec. 362(h), the Court will Order THE STATE OF OHIO, DEPARTMENT OF LIQUOR CONTROL, to pay to Debtors the following:

1. The sum of Six Hundred Nineteen & 23/100 Dollars ($619.23) as and for lost profits during the six (6) days in which THE DEPARTMENT wrongfully retained Debtors' inventory;

2. The sum of One Hundred Eighteen & 80/100 Dollars ($118.80) for the twelve (12) unaccounted for cases of canned beer;

3. The sum of One Hundred Twenty-Five & 00/100 Dollars ($125.00) as and for Debtor's lost wages for the day on which the search and seizure occurred; and

4. The sum of One Thousand, Two Hundred Fifty-Four & 00/100 Dollars ($1,254.00) in attorney's fees for the enforcement of Debtors' rights under the automatic stay.

■ An award of attorney's fees is appropriate where an initial violation of the stay is followed by Debtor's having to resort to the courts to enforce his rights. *In re Shriver*, 46 B.R. 626, 629–630 (Bankr.N. D.Oh.1985). Proof that a debtor has been injured by a willful violation is sufficient to invoke the sanctions of actual and punitive damages, costs and attorney fees. *Budget Service Co. v. Better Homes of Va., Inc.*, 804 F.2d 289 (4th Cir.1986).

Although the Court believes that a sufficient showing has been made for punitive damages by the acts of agents of THE DEPARTMENT OF LIQUOR CONTROL, none are assessed in the hope that the appropriate public officials will take appropriate action to see that such actions are not permitted to recur and that agents act within the laws they are sworn to uphold.

An appropriate Order shall issue.