In re Harry L. KEEN, Jr. and Kimberly D. Keen, Debtors.

Harry L. Keen, Jr., Plaintiff,

v.

Premium Asset Recovery Corp. and Richard A. Russell, Defendants.

Bankruptcy No. 01–36893–BKC–PGH. Adversary No. 03–3184 BKC–PGH–A.

United States Bankruptcy Court, S.D. Florida.

Nov. 3, 2003.

750

Jeffrey P. Kaiser, Esquire, Coral Springs, FL, for debtors.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

PAUL G. HYMAN, JR., Bankruptcy Judge.

**THIS MATTER** came before the Court for trial on September 26, 2003. The Court, having considered the evidence presented, the matters for which the Court has taken judicial notice, the record in this case, the argument of counsel, and having heard and observed the demeanor of the witnesses, and being otherwise being fully advised in the premises, enters the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### FINDINGS OF FACT

First USA Bank assigned a credit card account owed by Plaintiff, Harry L. Keen, Jr. ("Debtor") to Defendant, Premium Asset Recovery Corp. ("Premium Asset Recovery") for collection. Premium Asset Recovery owned such account prior to the Debtor's filing of his Petition under Chapter 7 of the Bankruptcy Code.

In August 2001, Defendant, Richard A. Russell ("Russell"), an attorney representing Premium Asset Recovery filed a complaint in Palm Beach County Court seeking recovery of the indebtedness. The Debtor was then served with process on October 4, 2001. Subsequent to service, the Debtor spoke with Russell's office regarding a possible settlement of the case. When the Debtor's attempts to settle the matter were rejected, he informed Russell's office that he would file for bankruptcy. The Debtor then filed for bankruptcy relief on December 31, 2001. However, Premium Asset Recovery was not listed on the Debtor's bankruptcy schedule when the case was filed, nor did Premium Asset Recovery receive actual notice of the bankruptcy action.

Russell then filed a motion on behalf of Premium Asset Recovery on January 24, 2002 in Palm Beach County Court ("County Court") seeking the entry of a Default Final Judgment. A Default Final Judgment was entered by the County Court on January 29, 2002 and automatically recorded in the County's public records. On that same day, Counsel for the Debtor filed a notice titled, "Suggestion of Bankruptcy"

in the County Court action and served Russell with a copy of said notice. Russell did not take any steps to collect the claim of Premium Asset Recovery subsequent to his receipt of the Suggestion of Bankruptcy. Then on April 16, 2002, the Debtor received an Order of Discharge in his bankruptcy case.

As part of his residential lease, the Debtor received a verbal option allowing him the first right of purchase should the landlord elect to sell the property. In January 2003, the Debtor's landlord informed him that the property was being sold and the Debtor attempted to exercise his first right of purchase. The Debtor testified that he spoke to a mortgage broker about financing but was told he would be unable to obtain the mortgage financing necessary to purchase the home because of the existence of the Default Final Judgment entered by the County Court. However, he did not formally apply for a mortgage, nor corroborate his testimony with any written document from the broker or proposed lender.

After the Debtor learned that he could not receive financing, he telephoned Premium Asset Recovery and was instructed to call Russell. In addition, an individual at Premium Asset Recovery told the Debtor that the entry of the Default Final Judgment was a mistake. The Debtor then telephoned Russell and was informed that all communications with Russell had to occur through his attorney. The Debtor told Russell's office that he was not represented by counsel but nevertheless, he was not permitted to speak with Russell.

On May 6, 2003, the Debtor retained Jeffrey P. Kaiser, Esquire ("Kaiser") as counsel to remove the Default Final Judgment. The Debtor paid Kaiser a retainer fee of $600.00 and executed a Retainer Agreement which provided that the Debtor would pay Kaiser $200.00 per hour for out-of-court services and $250.00 for in-court services.

On May 13, 2003, Kaiser sent correspondence to Russell seeking the correction of the entry of the Default Final Judgment and reimbursement of the $600.00 attorneys' fee. The letter requested a response by May 23, 2003 and asked that the Default Final Judgment be vacated by June 12, 2003. On June 13, 2003, Russell responded in writing to Kaiser, stating that Premium Asset Recovery had ceased all collection action against the Debtor's assets.

Kaiser then filed a Motion to Reopen the bankruptcy case to amend the schedules. On June 3, 2003, the Court entered an Order reopening the bankruptcy case. Premium Asset Recovery was then added as a Creditor to the Debtor's schedules by amendment.

In July 2003, the Debtor's landlord sold the home, forcing the Debtor and his family to move to another residence.

A trial was held on September 26, 2003. The Debtor contended that the Default Final Judgment obtained by Premium Asset Recovery and Russell (collectively, "Defendants") was a violation of the Automatic Stay imposed by 11 U.S.C. § 362(a) and argued that the failure of the Defendants to vacate the judgment was willful, therefore, warranting the imposition of punitive damages. While the Court agrees that the entry and continued record of the Default Final Judgment violated the Automatic Stay, the Court does not find that such conduct warrants the imposition of punitive damages.

### CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b)

and 28 U.S.C. § 157(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

### A. The Defendants' Motion Seeking a Default Final Judgment Against the Debtor was a Violation of the Automatic Stay

The filing of a bankruptcy petition automatically stays the commencement or continuation, including the issuance of or employment of process, of a judicial, administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of a case under this title, or to recover a claim against the debtor that arose before commencement of the case. 11 U.S.C. § 362(a)(1). The automatic stay afforded to debtors under the bankruptcy laws is a basic protection and its scope is intended to be broad. *In re Stringer*, 847 F.2d 549, 551–552 (9th Cir.1988).

The automatic stay imposed by 11 U.S.C. § 362(a)(1) takes effect at the time the bankruptcy petition is filed, regardless of whether the creditor or other affected entity has knowledge of the bankruptcy. *Elbar Investments, Inc. v. Pierce*, 272 B.R. 198, 203 (Bankr.S.D.Tex.2001); *In re Boston Business Machines*, 87 B.R. 867 (Bankr.E.D.Pa.1988); *In re Stucka*, 77 B.R. 777 (Bankr.C.D.Cal.1987); *In re O'Connor*, 42 B.R. 390 (Bankr.E.D.Ark. 1984). In this case, the automatic stay took effect on December 31, 2001, the day when the Debtor filed his bankruptcy petition with this Court, despite the fact that Premium Asset Recovery did not receive actual notice of the filing. Therefore, the Court finds that Russell's filing of the motion seeking the entry of the Default Final Judgment on January 24, 2002, followed by the entry and recording of the judgment in the Palm Beach County official records constituted a violation of the stay.

### B. The Defendants' Failure to Remove the Default Final Judgment was a Willful Violation of the Automatic Stay

This Court finds that although the Defendants violated the automatic stay by filing the motion for the entry of the Default Final Judgment, that action, in itself, was not a willful stay violation. A violation of the automatic stay which occurs without knowledge of a pending bankruptcy case does not constitute a willful violation which will subject a creditor to sanctions under § 362(h). *In re Smith*, 180 B.R. 311 (Bankr.N.D.Ga.1995). While the Debtor discussed the possibility of bankruptcy with Russell prior to filing, Russell did not receive actual notice of the bankruptcy case until he was served with the Suggestion of Bankruptcy on January 29, 2002, five days after he filed his motion for entry of the Default Final Judgment. Therefore, this Court finds that neither Premium Asset Recovery nor Russell acted willfully in violation of the automatic stay when they filed the motion for a Default Final Judgment on January 24, 2002.

However, this Court finds that once notice was given that bankruptcy relief had been filed, the Defendants had an affirmative duty to undo the violation of the stay. Several courts, including those in the Southern District of Florida, have held that the failure to take action to undo an innocent violation of the automatic stay constitutes a willful violation of the stay. Notably, the facts of another Southern District of Florida case are analogous to the matter at hand. In *In re Taylor*, 190 B.R. 459 (Bankr.S.D.Fla.1995), the debtor filed a Chapter 13 petition while a state court action was pending in the County Court of Dade County. Unaware of the petition, the state court entered a Default Final Judgment. Subsequently, counsel for the debtor sent a letter to the credi-

tor's attorney requesting that he vacate the judgment. The attorney refused to do so and the debtor moved for sanctions. The court granted sanctions, holding that the attorney had an affirmative duty to undo the violation of the automatic stay. *Id.* at 461. Since the attorney had the opportunity to remedy the situation but refused to do so, the Court found that he was in willful violation of the automatic stay. *Id. See In re Briskey,* 258 B.R. 473 (Bankr.M.D.Ala.2001) (holding that the automatic stay requires that a creditor not only stop collection efforts in garnishment proceedings initiated pre-petition, but must take the affirmative action of dismissing the garnishment proceedings); *See also In re Belcher,* 189 B.R. 16 (Bankr. S.D.Fla.1995); *In re Mitchell,* 66 B.R. 73 (Bankr.S.D.Ohio 1986); *In re Elder,* 12 B.R. 491 (Bankr.M.D.Ga.1981).

In the case before this Court, Russell was served with the Suggestion of Bankruptcy on January 29, 2002. Following that notice, Russell then had an affirmative duty to vacate the Default Final Judgment and thus, undo the violation of the automatic stay. However, he failed to do so at that time. Furthermore, Russell still failed to correct the entry of the judgment after he received Kaiser's letter, nearly four months after notice of the bankruptcy filing was served. Kaiser's letter requested documentation by May 23, 2002 to indicate that action had begun to get the judgment vacated and asked for proof that the judgment had in fact been vacated by June 12, 2003. However, Russell failed to respond at all until June 13, 2003 when he sent Kaiser a letter that stated that no further attempts to collect the debt had been made since the judgment was entered. The fact that the collection actions had ceased is of no relevance to the willfulness of Russell's actions. Russell had an affirmative duty to remedy the situation by vacating the judgment and he could have

done so promptly with minimum expense and delay. However, he simply refused to do so. Therefore, as a result this Court finds that the Defendants' failure to vacate the Default Final Judgment constituted a willful violation of the automatic stay.

■ As a result of the willful violation of the automatic stay, this Court finds that the Defendants are subject to sanctions under 11 U.S.C. § 362(h). This section of the Bankruptcy Code provides, "[a]n individual injured by any willful violation of a stay ... shall recover actual damages, including costs and attorneys' fees...." 11 U.S.C. § 362(h). "An award of attorneys' fees is appropriate where an initial violation of the stay is followed by Debtor's having to resort to the courts to enforce his rights." *In re Shriver,* 46 B.R. 626, 629–30 (Bankr.N.D.Ohio 1985), *Matter of Davis,* 74 B.R. 406, 411 (Bankr.N.D.Ohio 1987). The Court finds that the unsubstantiated testimony that the Debtor was told by a mortgage broker he would be unable to obtain a loan was not sufficient to warrant damages from the alleged loss of the Debtor's oral option to purchase the home. The Debtor did not produce any evidence to support an award of actual damages, aside from attorneys' fees. Accordingly, this Court finds that a sanction in the form of attorneys' fees is appropriate in this matter. To determine the amount of attorneys' fees, this Court looks to the case law. "In the event sanctions are awarded, time reasonably spent by debtor's counsel on out of court efforts to resolve such matters will be considered compensable." *In re Briskey,* 258 B.R. 473, 480 (Bankr.M.D.Ala.2001). As 11 U.S.C. § 362(h) and the case law provide, this Court orders that the Defendants pay the attorney fees resulting from both the Debtor's in court and out of court efforts to resolve the stay violation. The Court

reserves jurisdiction to enter a sanction in the form of attorneys' fees.

## C. Punitive Damages Under Section 362(h) Should Not Be Imposed Against the Defendants

■ Having resolved the matter of whether the Defendants' actions were a willful violation of the automatic stay, the Court now looks at whether those actions warrant the imposition of punitive damages. Section 362(h) of the Bankruptcy Code provides that "an individual injured by any willful violation of a stay provided by this section ... in appropriate circumstances, may recover punitive damages." To determine when "appropriate circumstances" exist for an award of punitive damages under section 362(h), many courts have adopted the standard set forth by the case, *In re Wagner*, 74 B.R. 898 (Bankr. E.D.Pa.1987). In that case, the court stated that: "[p]unitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes. Such awards are reserved for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief. To recover punitive damages, the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so." *Id.* at 903–904.

The courts have applied the following factors to determine whether to award punitive damages and the amount of such damages: (1) the nature of the defendant's conduct; (2) the nature and extent of the harm to the plaintiff (3) the defendant's ability to pay; (4) the motives of the defendant; and (5) any provocation by the debtor. See *In re Wagner*, 74 B.R. 898, 905 (Bankr.E.D.Pa.1987); *In re Tigue*, 82 B.R. 724, 737 n. 3 (Bankr.E.D.Pa.1988); *In re Aponte*, 82 B.R. 738, 745–746 (Bankr. E.D.Pa.1988), and *In re B. Cohen & Sons Caterers, Inc.*, 108 B.R. 482, (E.D.Pa.1989).

Bankruptcy courts have awarded punitive damages under Section 362 in the following situations: (1) where the violation of the stay was considered wrongful, with a high degree of malice and taken with "conscious disregard" of the stay, *In re Kroh Bros. Dev. Co.*, 91 B.R. 525, 537 (Bankr.W.D.Mo.1988) (defendant's officers, both attorneys, and with actual knowledge of the bankruptcy proceeding, filed a state court action for declaratory relief); (2) where the violation of the stay emanated from an attitude of disdain for "legal technicalities" and was accompanied by threats and "bluffs," *Matter of Nat'l Marine Sales and Leasing, Inc.*, 79 B.R. 442, 448–49 (Bankr.W.D.Mo.1987) (knowing of the bankruptcy filing, real property lessor came onto debtor's business property and demanded employees vacate the premises telling them he would do "whatever was necessary" to eject them); *In re Wagner*, 74 B.R. 898 (Bankr.E.D.Pa.1987) (creditor burst into debtor's home and threatened "to blow his brains out" in an effort to convince him to return trucks); (3) where the violation of the stay was accompanied by "violent and unwarranted behavior," *Budget Serv. Co. v. Better Homes of Va., Inc.*, 804 F.2d 289, 292–93 (4th Cir.1986) (after receiving notice of the bankruptcy and being informed by debtor's attorney of the automatic stay the lessor of trucks repossessed the vehicles using a shot gun and thereafter blocking the drive to prevent debtor's employees from getting to their jobs); (4) where the violation of the stay was accompanied by a deliberate and arrogant defiance of federal law, *In re Tel–A–Communications Consultants, Inc.*, 50 B.R. 250, 255 (Bankr.Conn.1985) (defendant vehicle lessor, informed of the bankruptcy stay by debtor's attorney, repossessed debtor's vehicles stating that his

violation of § 362 was not "willful," it was justified, because debtor/lessee failed to pay rent; however, court found ample basis to award punitive damages because of a rather profane expletive attributed to defendant's president showing he had little regard for the authority of bankruptcy law); and (5) where the violation of the stay occurred in an "egregious scenario," *Mercer v. D.E.F. Inc.,* 48 B.R. 562, 565 (Bankr.Minn.1985) (renter of stereo, with knowledge of single-parent debtor's bankruptcy, sent two employees to debtor's apartment and, despite the fact that they could see debtor's three unattended children were frightened, they pounded and kicked on the door until the children opened it, whereupon the men entered the premises and repossessed the stereo), *In re Aponte,* 82 B.R. 738 (Bankr.E.D.Pa. 1988) (landlord, with actual knowledge of the stay, violated two court orders instructing him to provide the debtor and the debtor's two young children with heat and hot water).

■ In considering whether to impose punitive damages, this Court is mindful of their purpose. "Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and to deter him and other like him from similar conduct in the future." *Restatement (Second) of Torts § 908 (1979).* Taking into account the gravity of the offense, the nature of the Defendants' conduct and the extent of harm caused to the Debtor, this Court finds that an award of punitive damages would not be appropriate in this case. Here, Russell failed to vacate the Default Final Judgment and undo the violation of the automatic stay. However, no action had been taken to enforce the judgment and take collection action against the Debtor's assets. Furthermore, the record in this case was insufficient to find that the Debtor suffered any damages from his inability to exercise his verbal purchase option other than attorneys' fees. As such, this Court finds that an award of attorneys' fees and costs is a sufficient sanction to deter the Defendants from future violations of the automatic stay and punish their conduct. Consequently, punitive damages are not an appropriate remedy in this case and the Court denies the Debtor's request for same.

### CONCLUSION

The Court finds that Russell's motion seeking a Default Final Judgment in Palm Beach County Court was a violation of the automatic stay imposed by 11 U.S.C. § 362(a)(1). The Court recognizes that said violation was inadvertent but finds that nevertheless, such action violated the protection afforded by the stay provision of the Bankruptcy Code. While the Court finds neither Premium Asset Recovery nor Russell acted willfully in violation of the automatic stay when the motion was filed in County Court, the subsequent failure to vacate the judgment constituted a willful violation of the automatic stay. Thus, sanctions in the form of an award of attorneys' fees is warranted and will be imposed against the Defendants. The Court finds that the award of attorneys' fees is sufficient to serve as both punishment and as a deterrence to any such future conduct by the Defendants and denies the Debtor's request for punitive damages.

### ORDER

The Court, having considered the evidence presented, the matters for which the Court has taken judicial notice, the record in this case, the argument of counsel, and having heard and observed the demeanor of the witnesses, and being otherwise be-

ing fully advised in the premises, does hereby:

**ORDER AND ADJUDGE** that:

1. Defendant, Richard A. Russell take necessary action to remove the Default Final Judgment against the Plaintiff, Harry L. Keen, Jr. from the Palm Beach County Court record and from the public records of Palm Beach County, Florida;

2. Defendants, Premium Asset Recovery and Richard A. Russell pay Plaintiff, Harry L. Debtor, Jr. the reasonable value of his attorneys' fees associated with resolving this matter.

3. The Court reserves jurisdiction to enter a sanction in the form of attorneys' fees. The Plaintiff, Harry L. Keen, Jr. shall file a Motion for Determination of Amount of Attorneys' Fees within thirty (30) days from the date of this Order.