**In re Ray Irwin SHAFER a/k/a Ray I. Shafer, Sandra Jean Shafer a/k/a Sandra J. Shafer, Debtors.**

**Bankruptcy No. 81–40127.**

United States Bankruptcy Court, D. Kansas.

April 7, 1986.

David R. House, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for I.R.S.

Jeffrey Cooper and Thomas A. Valentine, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, Kan., for debtors.

penses to Barnett & Alagia and the Mitchell Law Firm would equal $135,976.93.

Lloyd C. Swartz, Topeka, Kan., Trustee.

## ORDER

JAMES A. PUSATERI, Bankruptcy Judge.

This case is before the Court on the debtors' motion for the Internal Revenue Service to show cause why it should not be held in contempt for violating the automatic stay imposed by 11 U.S.C. § 362. The debtors are represented by Thomas A. Valentine and Jeffrey Cooper, and the IRS is represented by David R. House.

## FINDINGS OF FACT

The debtors filed their chapter 13 petition in this Court on February 24, 1981. At that time they were Kansas residents. Their plan was confirmed on May 26, 1981. Around this time they moved to Colorado.

The IRS was a scheduled creditor. In April, 1983 the Court granted the IRS stay relief to set off the debtors' refunds for 1977, 1978 and 1981 against their 1980 taxes. After the 1983 tax year, the IRS filed a proof of claim for $10,741.11. On the debtors' motion, the Court modified the plan to provide for the 1983 taxes by raising the monthly payment and requiring the debtors to apply their 1984 and 1985 tax refunds into the plan. The modified plan called for full payment of the IRS claim by April, 1986.

In June, 1985 the IRS set off the debtors' income tax refunds against their 1983 taxes. On July 19, the IRS Service Center at Ogden, Utah, sent the debtors a demand letter requesting immediate payment of the remaining tax liability, and warning that their wages might be levied. The debtors contacted their attorney, Thomas A. Valentine, who informed the Ogden Service Center that the debtors were still under the protection of this Court and demanding that collection efforts cease.

On September 3, 1985, however, the IRS issued a levy on the debtors' wages due from their employer, Speedway Transportation, Inc. Speedway received the levy on the tenth, and the debtors learned of it on the thirteenth. On the seventeenth, the IRS sent the debtors a collection information statement form to aid in collection of their taxes. Mrs. Shafer contacted Mr. Valentine immediately upon learning of the wage levy. He advised her to call the IRS Denver office and ask for a Ms. Phipps. Mrs. Shafer called Denver, but was told that Ms. Phipps did not speak with taxpayers. The Denver office did advise that the IRS believed the debtors' bankruptcy case had been dismissed.

When the IRS office in Wichita learned of the collection efforts against the debtors, Donald Hampton, a special procedures staff advisor, called the debtors' employer to release the levy orally, and sent a written release the same day. He also told the Ogden and Denver offices to cease all collection efforts, and arranged for return of the levied wages, with interest, by November 4, 1985.

Mr. Hampton testified on behalf of the IRS at the trial of this matter. He explained that when the debtors moved from Kansas to Colorado, they moved into a different IRS district. This caused the IRS considerable confusion, and led to collection efforts in violation of the automatic stay.

When the debtors filed their bankruptcy in the District of Kansas, the IRS office in Wichita entered a computer code in the debtors' account to suspend collection during the bankruptcy. After the debtors moved to Colorado, the debtors' tax return reflected a Colorado address, and the returns were filed in a different IRS regional center.

Although this Court retained jurisdiction over the debtors' bankruptcy, IRS personnel assumed this was a Colorado bankruptcy. The Bankruptcy Court for the District of Colorado had a standing order permitting setoff of refunds without Court approval. Someone with the IRS removed the computer code suspending collection to permit setoff of the debtors' refunds. The code was re-entered three days later, but later was removed a second time. This second removal permitted the wage levy in

September. Mr. Hampton testified that he was unable to trace responsibility for the second code removal to any individual, and therefore had no explanation for it.

The wage levy caused the debtors considerable inconvenience. The wages levied in September were not returned until November. Several other paychecks were delayed as a result of the levy.

At trial the debtors testified that they were unable to pay many of their bills on time, but these were regular bills not incurred as a result of the levy. The debtors, who are both employed as truck drivers, also testified that the levy may have cost them an opportunity for a long haul trip that would have paid more than the short haul trip actually assigned to them, but the Court finds this evidence speculative.

The debtors spent $59.38 on long distance phone calls made necessary by the IRS action, and $21.50 on express mail for sending documents to their attorney.

The trial was originally set for September 30, 1985 but was continued on relatively short notice. The debtors had already travelled from Omaha, Nebraska to Topeka for the hearing before learning of the continuance. The round trip was 590 miles. The debtors lost one and one-half days of work at $150 per day.

The trial was held on February 13, 1986. The debtors travelled to Topeka from Morrell, Kansas, a round trip of 60 miles, and lost two days of work at $150 per day.

Their attorney, Mr. Valentine, has submitted a fee statement showing 110.20 hours of attorney time spent on this matter at $75 per hour, plus $12.41 of expenses, for a total of $7,625.41.

## CONCLUSIONS OF LAW

The debtors seek civil contempt sanctions against the IRS for violating the automatic stay. The Court notes that 11 U.S.C. § 362(h) does not apply to these proceedings because this case was filed before October, 1984. Because the debtors have not relied upon 26 U.S.C. § 7430 in support of their claim for attorney fees, the Court will not consider its applicability. These are contempt proceedings rather than proceedings for statutory sanctions under 11 U.S.C. § 362(h) or for attorney fees under 26 U.S.C. § 7430.

■ The contempt power is inherent in all courts. The ability to enforce orders and judgments through the contempt power is essential to the orderly administration of justice. See *Shillitani v. United States,* 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966); *United States v. Barnett,* 376 U.S. 681, 696–97, 84 S.Ct. 984, 992–93, 12 L.Ed.2d 23 (1964); *Ex Parte Robinson,* 19 Wall. (86 U.S.) 505, 510, 22 L.Ed.2d 205 (1874); 11 Wright and Miller, Federal Practice and Procedure: Civil § 2960 (1973).

■ Although a bankruptcy court is not a "court of the United States" as that term is defined in 28 U.S.C. § 451, it is a court with the power to enter orders and judgments that become final if not appealed under 28 U.S.C. § 158. Bankruptcy courts therefore have inherent powers to enforce their orders and judgments through contempt proceedings.

■ Title 11 U.S.C. § 105(a) codifies the contempt powers of bankruptcy courts. It provides that bankruptcy courts may issue "any order, process or judgment that is necessary or appropriate" to carry out the provisions of the Bankruptcy Code. Subsection (c) of § 105 provides that the power of bankruptcy courts shall be determined by title 28. 28 U.S.C. § 157 provides that bankruptcy courts may hear and decide "core proceedings" arising under the Bankruptcy Code. The Court concludes that a civil contempt proceeding to enforce the automatic stay imposed by 11 U.S.C. § 362 is a core proceeding. See *Better Homes of Va. v. Budget Service Co.,* 52 B.R. 426, 428–29 (E.D.Va.1985); *In Re Depew,* 51 B.R. 1010 (Bankr.E.D.Tenn.1985).

The IRS asserts that the debtors are seeking sanctions for criminal contempt and argues that this Court cannot impose criminal penalties against the government.

This argument is without merit because this is a civil contempt proceeding.

■ Criminal contempt sanctions are imposed solely to punish past conduct. The purpose of civil contempt sanctions can be either coercive or remedial. Coercive contempt sanctions are intended to enforce future compliance with court orders. Remedial contempt sanctions are intended to compensate parties injured by noncompliance with court orders. *Ager v. Jane C. Stormont Hospital & Training, etc.*, 622 F.2d 496 (10th Cir.1980); *In Re 2218 Bluebird Ltd. Partnership*, 41 B.R. 540 (Bankr. S.D.Cal.1984); *Matter of DePoy*, 29 B.R. 471 (Bankr.N.D.Ind.1983).

■ Here, the debtors seek compensation for damages caused by the IRS action. The return of the levied wages, with interest, by the IRS has not compensated the debtors fully. At the very least, their damages include out-of-pocket expenses for postage and long distance phone calls. This is clearly a civil contempt proceeding.

The IRS also contends that it cannot be held in contempt because its actions were inadvertent rather than willful. This argument is without merit.

■ Civil contempt sanctions may be imposed even in the absence of willfulness. Accidental, inadvertent or negligent conduct can be grounds for imposing civil contempt sanctions, and those sanctions may include attorney fees. *Perry v. O'Donnell*, 759 F.2d 702 (9th Cir.1985); *TWM Mfg. Co., Inc. v. Dura Corp.*, 722 F.2d 1261 (6th Cir.1983); *Commodity Futures Trading Com'n. v. Premex, Inc.*, 655 F.2d 779 (7th Cir.1981); *Vuitton et Fils, S.A. v. Carousel Handbags*, 592 F.2d 126 (2nd Cir.1979); *In Re Burrow*, 36 B.R. 960 (Bankr.D.Utah 1984); *In Re Petro*, 18 B.R. 566 (Bankr.E.D.Pa.1982); *In Re Sandmar Corp.*, 12 B.R. 910 (Bankr.D.N.M.1981).

■ The Court finds the IRS in civil contempt. A stay violation is willful when the party acts with knowledge of the filing of the bankruptcy. *In Re Meinke, Peterson & Damer, P.C.*, 44 B.R. 105, 108 (Bankr.N.D.Tex.1984). The IRS must be charged with the knowledge of its agents, and IRS personnel in Wichita knew the debtors were under the protection of this Court. The IRS is also responsible for the actions of its agent or agents in Ogden or Denver who mistakenly removed the computer code and permitted collection efforts against the debtors. The size and complexity of the IRS does not excuse violation of the automatic stay. *In Re Coleman American Companies, Inc.*, 26 B.R. 825, 831 (Bankr.D.Kan.1983).

The IRS had knowledge of the bankruptcy but violated the stay several times. The Ogden office sent a demand letter in July, 1985. After debtors' counsel informed the Ogden office that the debtors were in bankruptcy, the IRS levied their wages and sent a form for them to fill out to aid in collection of their unpaid tax.

The circumstances warrant imposition of civil contempt sanctions to compensate the debtors *and* to induce future compliance. Because Mr. Hampton could not explain why the computer code suspending collection efforts against the debtors was removed the second time, there is no assurance it will not happen again.

The Court awards the following compensatory sanctions:

| | |
|---|---|
| $ 59.38 | — long distance phone calls |
| 21.50 | — Federal Express charges |
| | lost income, from the trip for the |
| 225.00 | — continued hearing |
| 300.00 | — lost income from attending the trial |
| | mileage $ 20.5¢ per mile for 650 |
| 133.25 | — miles |
| $739.13 | |

■ The $7,612.50 of attorney fees requested by the debtors' attorney for 110.20 hours of attorney time is not reasonable. The 110.20 hours is excessive for a case of this nature. The Court considers that this matter warranted only 20 hours of attorney time:

| | |
|---|---|
| 2.5 | Clients report levy, general conference and correspondence with clients |
| 3.0 | Discussions and correspondence with IRS |

9.0   Research and memos on contempt sanctions against IRS
1.5   Prepare and file motion
2.0   Prepare for hearing
2.0   Appear at hearing
20.0

The Court awards $1,500 of attorney fees for 20 hours at $75 per hour. The IRS is therefore ordered to pay sanctions and attorney fees in the amount of $2,239.13.

IT IS SO ORDERED.