In re Walter J. STUCKA and Rosalie F. Stucka, Debtors.

Walter J. STUCKA and Rosalie F. Stucka, Plaintiffs,

v.

UNITED STATES of America, et al., Defendants.

Bankruptcy No. LAX 85–54082.
Adv. No. LAX 86–3087.

United States Bankruptcy Court, C.D. California.

Sept. 9, 1987.

---

**4.** The expected profit on an eighteen month investment was seventy-five percent.

Thomas Davis of Ronald M. Stark and Associates, for the debtor.

Arthur Greenwald, Asst. U.S. Atty., for the Internal Revenue Service.

Orry P. Korb, for County of Los Angeles.

Edmond B. Mamer, Deputy Atty. Gen., for California Franchise Tax Board.

## MEMORANDUM OF DECISION

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I. INTRODUCTION

This adversary proceeding raises the issue of whether the interception of a debtor's tax refund and its application to back child support obligations, by state and federal authorities who had notice of this pending Chapter 13 case, constitutes a willful violation of the automatic stay, such that attorneys fees should be awarded to the debtor.

### II. FACTS

Debtors Walter J. and Rosalie F. Stucka filed their Chapter 13 petition on August 15, 1985.

Pursuant to a prior state court order, Walter Stucka is required to pay child support in the amount of $150 per month to his former wife for the benefit of two pre-teen-age daughters. Prior to filing this case, Walter Stucka fell behind in making the child support payments: The arrearages at the time of filing amounted to $12,086.06. In consequence, his former wife was required to obtain public financial assistance.

Notice of the filing of the case was given to the Los Angeles County court trustee, the agent for child support collection for Los Angeles County ("the county trustee"). On September 16, 1985 debtors served their Chapter 13 plan on the county trustee, the Internal Revenue Service ("IRS") and the California Franchise Tax Board ("FTB"). However, neither the IRS nor the FTB was given any other notice of the filing.

Debtors' plan, which was confirmed on November 18, 1985, provides for payments of $494.05 per month for 60 months, and provides that general unsecured creditors are to receive payment through the plan of 70% of their claims. The delinquent child support payments are included among the unsecured claims, and thus are provided for by the plan. In addition, the plan provides that regular monthly child support payments are to be made directly to the county trustee.

On May 5, 1986, the IRS sent notice to the debtors that their 1984 tax refund of $1,609 had been applied to the past-due child support. In addition, on May 18, 1986 the IRS informed the debtors that their 1985 tax refund in the amount of $951 had also been applied to the same child support debt. The IRS took this action pursuant to Internal Revenue Code § 6402(c), 26 U.S.C. § 6402(c) (Supp.1987), which provides in part:

> The amount of any overpayment to be refunded to the person making the overpayment shall be reduced by the amount of any past-due support ... owed by that person of which the Secretary has been notified by a State in accordance with section 464 of the Social Security Act. The Secretary shall remit the amount by which the overpayment is so reduced to the State collecting such support and notify the person making the overpayment that so much of the overpayment as was necessary to satisfy his obligation for past-due support has been paid to the State.

On April 4, 1986, the FTB informed the debtors that their California state income tax overpayment in the amount of $91 had been paid to the county by the FTB, pursuant the county's request, because of the same overdue child support debt. The FTB took this action pursuant to California Government Code § 12419.5 (West 1980), which provides in part:

> The Controller may, in his discretion, offset any amount due a state agency from a person or entity, against any amount owing such person or entity by any state agency.... For purposes of this section, an amount owing to a person or entity by any state agency shall include any tax refund.

Los Angeles County ("the county") had instructed the FTB to intercept and to pay over the tax refunds owing to debtors pursuant to the foregoing statutory authorization, and the state exercised its right to take debtors' tax overpayment in partial satisfaction of this obligation.

Absent the filing of a bankruptcy case and the imposition of the automatic stay of

Bankruptcy Code § 362, 11 U.S.C. § 362 (1979 & Supp 1987), this is a typical case of tax overpayment intercepts authorized in Cal. Gov't Code § 12419.5 and Internal Revenue Code § 6402(c).

In this adversary proceeding, filed against the IRS, the FTB and the county, debtors contend that the post-petition tax refund intercepts were willful violations of the automatic stay. In their complaint debtors seek a turnover of the disputed amounts and their attorneys fees and costs in this adversary proceeding.

The intercepted funds have been turned over to the Chapter 13 Trustee, according to representations made at oral argument. In consequence, the only remaining issue is whether debtors are entitled to their attorneys fees incurred in pursuing this complaint in consequence of the violation of the automatic stay by the defendants. The Court holds that debtors are entitled to their attorney fees and costs in this adversary proceeding.

## III. DISCUSSION

The IRS and the FTB have made motions for summary judgment, in which they are joined by the county. If it appears to the Court, under the evidence before the Court on a summary judgment motion, that summary judgment should be granted *against* the moving party and that there is no genuine issue as to any material fact relating thereto, the Court has the power to enter such judgment. *Scoggins v. Boeing Co.,* 742 F.2d 1225, 1227 n. 1 (9th Cir.1984); *Golden State Transit v. Los Angeles,* 726 F.2d 1430, 1431 n. 1 (9th Cir.1984), *cert.*

*denied,* 471 U.S. 1003, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985); *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 311 (9th Cir.1982); 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2720, at 27–35 (2d ed. 1983). The party against whom such summary judgment is to be rendered must be given a full and fair opportunity to explore the issues involved in the motion. *Heinz v. Commissioner of Internal Revenue,* 770 F.2d 874, 876 (9th Cir.1985); *Cool Fuel, supra,* 685 F.2d at 312. In this case all of the parties have all had a full and fair opportunity to explore the issues involved in this summary judgment motion.

### A. NOTICE

A preliminary issue is whether the FTB received adequate notice of the filing of the bankruptcy case. Only the FTB has raised this issue: Neither the IRS nor the county has challenged the sufficiency of notice of the filing of the bankruptcy case. Indeed, the county concedes that the it received actual notice of the filing of the Chapter 13 case.

The FTB denies that it received sufficient notice of the Chapter 13 case. It asserts that debtors did not mail a copy of their petition to the FTB, and that they improperly served their Chapter 13 plan, so that it was ineffective to inform the FTB of the pendency of the case. The FTB contends that service of the plan by mail on the FTB's compliance section in Sacramento was insufficient notice under Rule 4(d)(6) of the Federal Rules of Civil Procedure,[1]

---

1. Rule 4(d)(6) of the Federal Rules of Civil Procedure provides, in part:

d) Summons and Complaint: Person to Be Served. The summons and complaint shall be served together.... Service shall be made as follows: ...

(6) Upon a state or municipal corporation or other governmental organization thereof subject to suit, by delivering a copy of the summons and of the complaint to the chief executive officer thereof or by serving the summons and complaint in the manner prescribed by the law of that state for the service of summons or other like process upon any such defendant.

The FTB has ignored Bankruptcy Rule 7004, the applicable rule for service of process in bankruptcy courts. This rule incorporates Rule 4(d), Fed.R.Civ.P., making that rule applicable in bankruptcy proceedings. However, Bankruptcy Rule 7004(b)(6) provides that, in addition to the methods of service provided for in Rule 4(d), service may also be made by first class mail postage prepaid:

(6) Upon a state or municipal corporation or other governmental organization thereof subject to suit, by mailing a copy of the summons and complaint to the person or office upon whom process is prescribed to be served by the law of the state in which service is made....

and was insufficient under California state service of process requirements as well.[2]

The FTB misapprehends the purpose of the rules governing the service of process, and fails to appreciate the effect of the notice actually given by debtors to the FTB.

■ The rules governing the service of process cited by the FTB apply only to a summons and complaint. The automatic stay resulting from the filing of a bankruptcy case does not depend upon service in the manner of a summons and complaint. Indeed, it is effective notwithstanding the failure to give notice of any sort to an affected creditor. *See, e.g., Dubin v. Jakobowski (In re Stephen W. Grosse, P.C.)*, 68 B.R. 847, 850 (Bankr.E.D.Pa.1987).

■ Once notice is given of the filing, a creditor is subject to the full force of the automatic stay, and is subject to all penalties for violation thereof. Such notice may be oral or written, and may be given by any means and in any manner. While service of such notice in the manner provided for a summons and complaint is permitted, it is not required.

■ Compliance with state or federal requirements for service of a summons and complaint is irrelevent to actual notice. By mailing their plan to the FTB (even though insufficient as service), debtors gave the FTB actual notice of their pending Chapter 13 case. Where actual notice of a pending bankruptcy case is given, no more formal notice is required. *Cf. In re Bragg*, 56 B.R. 46 (Bankr.M.D.Ala.1985) (notice of filing of bankruptcy petition need not be formal notice, but may be such notice as would cause a reasonable person to make further inquiry); *In re Sandmar Corp.*, 12 B.R. 910, 916 (Bankr.D.N.M.1981).

■ The Court holds that the FTB received sufficient actual notice to inform it of the pendency of debtors' bankruptcy case, and therefore of the automatic stay resulting therefrom.

The FTB also argues that, since debtors owed no taxes to the FTB, mailing the plan was not effective to trigger action on the part of the FTB. On receipt of the plan in the mail, according to the FTB, the compliance section would review its records, and, on discovering no outstanding tax liability, would take no further action to avoid violating the automatic stay. The pleadings of the FTB imply that it cannot be held accountable for violations of the automatic stay that occur outside its tax collection operations, even where it has actual notice of the pending bankruptcy.

The legislative history of the Bankruptcy Code states:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 340, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5963, 6296. The FTB is not excused from complying with section 362 because it fails to perceive that its actions impact a pending bankruptcy case of which it has actual notice.

## B. VIOLATION OF THE AUTOMATIC STAY

The Court must next determine whether the defendants have violated the automatic stay. There are few reported cases involving the interception of tax overpayments for delinquent child support obligations in the bankruptcy context. Most of the re-

**2.** California Code of Civil Procedure § 416.50 (West 1973) states in substance that process may be served on a public entity by delivering a copy of the process to the clerk, secretary, president, presiding officer or other head of its governing body. California Code of Civil Procedure § 415.30 (West 1973) provides that service by mail may be effectuated by mailing a copy of the summons and complaint to the person to be served together with two copies of the notice and acknowledgement and a return envelope, postage prepaid, addressed to the sender. The FTB asserts that debtors did not comply with these requirements in serving their plan on the FTB, a contention which debtors do not dispute.

ported cases involve the assertion of a preferential transfer within 90 days prior to the filing of the bankruptcy case. *See Warren v. Ohio Department of Welfare (In re Conley)*, 54 B.R. 363 (Bankr.S.D.Ohio 1985); *Biddle v. IRS (In re Biddle)*, 31 B.R. 449 (Bankr.N.D.Iowa 1983).

The automatic stay is effective as of the moment of filing of the bankruptcy petition. *In re Davis*, 74 B.R. 406, 410 (Bankr.N.D.Ohio 1987); *Mewes v. Bankwest of South Dakota (In re Mewes)*, 58 Bankr. 124, 127 (Bankr.D.S.D.1986). The protection afforded by the automatic stay continues, unless otherwise terminated by the Court or the operation of statute, until debtors' discharge is granted or denied or the case is closed or dismissed. Bankruptcy Code § 362(c), 11 U.S.C. § 362(c) (1979 & Supp.1987). The IRS originally argued that the right to the refund of debtors' tax overpayment was property of the estate that had revested in debtors upon confirmation of their plan, pursuant to Bankruptcy Code § 1327, 11 U.S.C. § 1327 (1979 & Supp.1987)[3]. Therefore, the IRS contended, the property was not property of the estate subject to and protected by the automatic stay. Debtors' plan, however, provides that such property does not revest in the debtors until their discharge, which has not yet occurred.

The Court holds that, when the IRS and the FTB intercepted debtors' tax overpayments, the debtors' right to receive the tax overpayment refund was property of the estate, subject to and protected by the automatic stay. Each of the defendants was bound by the provisions of debtors' confirmed plan, pursuant to Bankruptcy Code § 1327(a).[4] Debtors' plan provided for the payment of the delinquent child support obligations. Further, neither of these defendants obtained relief from the automatic stay to proceed with a tax intercept. Therefore, the intercepts of debtors'

tax overpayments violated the automatic stay.

As to the county, the evidence shows that it initiated the intercept procedure by instructing the FTB and the IRS to turn over debtors' tax overpayments pursuant to Cal. Gov't Code § 12419.5 and 26 U.S.C. § 6402(c). This action was taken prior to the filing of debtors' case, and was not in violation of bankruptcy law. Upon receiving notice of the pending case, the county expunged Walter Stucka's name from the 1986 intercept list. It also claims that it attempted without success to delete his name from the 1985 intercept list. However, the county has provided no information on what steps it took for this purpose.

Although the county also asserts that it took steps to assure that any money received from the 1985 intercept list would not be disbursed, there is no evidence that the county rescinded its instructions to the taxing authorities or notified them of the pending bankruptcy case. At oral argument the county admitted that there was "a lapse given the procedures that the county had to operate under in interfacing with the state and federal government in this situation." It is apparent that the county's response to notice of the pending bankruptcy case was insufficient. It thus must share the responsibility with the taxing authorities for violating the automatic stay.

## C. WILLFULNESS

A case similar to that before this Court is *In re Ashby*, 36 B.R. 976 (Bankr.D.Utah 1984), where the debtor sued the Utah Office of Recovery Services (ORS) because, with knowledge of the filing of the debtor's bankruptcy, it had applied the debtor's tax overpayment to past due child support obligations owing to the state. Because the ORS had not obtained relief from the auto-

---

**3.** Bankruptcy Code § 1327(b) provides: *"Except as otherwise provided in the plan or the order confirming the plan,* the confirmation of a plan vests all of the property of the estate in the debtor."* 11 U.S.C. § 1327(b) (1979 and Supp. 1987) (emphasis added).

**4.** Section 1327(a) provides: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a) (1979 and Supp.1987).

matic stay, the court held it in contempt for violation of the automatic stay.

The Court need not reach the issue of contempt in the present case, because Congress has since enacted Bankruptcy Code § 362(h), 11 U.S.C. § 362(h) (Supp.1987) which provides:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

■ The legislative history of § 362(h) is not instructive as to Congress' specific intent in enacting this section. The cases have construed "willful" in the context of § 362(h) to cover any intentional and deliberate act done with knowledge that the act is in violation of the automatic stay. *See, e.g., In re Davis*, 74 B.R. 406, 410 (Bankr. N.D.Ohio 1987); *Mewes v. Bankwest of South Dakota (In re Mewes)*, 58 B.R. 124, 128 (Bankr.D.S.D.1986); *In re Bragg*, 56 B.R. 46, 49 (Bankr.M.D.Ala.1985). A willful violation of the automatic stay provision is also committed when a party acts in violation of the stay with knowledge or notice of sufficient facts to cause a reasonably prudent person to make additional inquiry to determine whether a bankruptcy petition has been filed. *In re Bragg, supra*, 56 B.R. at 49.

The interception of debtors' tax overpayment by the IRS occurred some eight months after it received actual notice of the pending bankruptcy proceeding; the FTB instituted its intercept some seven months after its receipt of actual notice. Both failed in the intervening time to take action to prevent the foreseeable violation of the automatic stay in this case. The county, in failing to rescind its 1985 intercept order or to notify the taxing authorities not to execute the intercept, also violated the automatic stay. The Court holds, therefore, that the intercepts conducted by the IRS and the FTB at the direction of the county were carried out with knowledge that such actions were in violation of the automatic stay, and that these acts constituted willful violations by the defendants of the automatic stay.

The defendants asserted at oral argument that they cannot be expected to halt their tax intercept procedures upon notification of the filing of a bankruptcy. They cited the ponderous mechanisms involved in executing a tax overpayment intercept and the difficulty of altering computer programs to accomodate the notice of pending bankruptcy cases.

The defendants may not shield their violations of the automatic stay, however, by erecting a blind of "complexity." In holding that an automatic stay violation by the IRS is willful when it acts with knowledge of the filing of a bankruptcy, the court in *In re Shafer*, 63 B.R. 194 (Bankr.D.Kan. 1986) stated that the IRS must be charged with the knowledge of its agents, and that "the size and complexity of the IRS does not excuse violation of the automatic stay." *Id.*, 63 B.R. at 198. Similarly, in finding a willful violation of the automatic stay by the IRS in *In re Santa Rosa Truck Stop, Inc.*, 74 B.R. 641, 643 (Bankr.N.D.Fla.1987), the court stated:

> If the automatic stay is to afford any meaningful protection to a debtor attempting to reorganize, it must be enforced against the colossus of the I.R.S. just as it is against individual and corporate creditors who may persist in their collection efforts after a petition for relief has been filed.

■ This observation applies equally to the FTB and the county. No private entity in similar circumstances would be permitted to justify its violation of the automatic stay on the basis of its complexity and inability to respond. Any entity, no matter how large or convoluted, must observe the automatic stay and the protections afforded the debtor thereunder. Congress created no exception under section 362 for inordinately complex entities of any sort, whether public or private: All alike are bound by and must observe the automatic stay.

■ The automatic stay applies to all "entities," which by definition includes governmental units. 11 U.S.C. § 101(14)

(Supp.1987). Where Congress intended that governmental units receive special treatment, it provided specific exceptions. *See* 11 U.S.C. §§ 362(b)(4), (b)(5) and (b)(8). The legislative history states that with respect to the application of the automatic stay to governmental actions, Congress intended to assert the bankruptcy power over state governments under the supremacy clause of the United States Constitution. H.R.Rep. No. 595, 95th Cong., 1st Sess. 342 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5963, 6299; S.Rep. No. 989, 95th Cong., 2d Sess. 51 (1978), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5837.

Each defendant concedes that the automatic stay of section 362 applies to it: The automatic stay has been a part of the Bankruptcy Code since its effective date of October 1, 1979.[5] During almost eight years that the automatic stay has applied to the tax intercept program, no defendant has taken any steps to adopt procedures to prevent this program from systematically violating the automatic stay.

Even while this adversary proceeding has been pending, no defendant has taken any steps to prevent further violations of the automatic stay in similar circumstances. The Court notes that the county's preparation of a single annual list of delinquent parents, with no apparent procedure for updating or correcting the list once it has been issued, is coldly indifferent to violations of the automatic stay such as the intercepts complained of here. Where no procedure is established to provide for the contingency of an automatic stay, cases of this nature will continue to multiply, and the county will remain in peril of liability for violations of the automatic stay. Furthermore, no defendant has shown any inclination or willingness to take any steps to prevent further violations of the automatic stay of the kind illustrated in this case.

From the failure of each defendant to adopt any procedures to prevent the violation of the automatic stay, the Court finds that each defendant has engaged in a pattern of willful and wanton disregard of its obligations under section 362, including the automatic stay violations in this case.

 This pattern of willful and wanton disregard of the automatic stay requires that debtors be awarded their costs and attorneys fees in this case. A party who violates the automatic stay may be held in contempt and the court may award damages to compensate the other party for the actual loss suffered. *Computer Communications, Inc. v. Codex Corp. (In re Computer Communications, Inc.)*, 824 F.2d 725, 731 (9th Cir.1987). An award of attorneys fees is appropriate where a debtor must resort to the Court to enforce his or her rights in consequence of a violation of the automatic stay. *In re Davis*, 74 B.R. 406, 411 (Bankr.N.D.Ohio 1987).

This pattern of willful and wanton disregard of the automatic stay also constitutes an appropriate circumstance for the award of punitive damages under section 362(h). *See, e.g., Budget Service Co. v. Better Homes of Virginia*, 804 F.2d 289, 292–93 (4th Cir.1986); *Tel-A-Communications Consultants, Inc. v. Auto-Use (In re Tel-A-Communications Consultants, Inc.)*, 50 B.R. 250, 255 (Bankr.D.Conn. 1985); *In re Bragg*, 56 B.R. 46, 50 (Bankr. M.D.Ala.1985). Fortunately for defendants, the debtors have not sought punitive damages in this adversary proceeding, and the Court cannot award them.

## IV. CONCLUSION

The defendants in this adversary proceeding have had a full and fair opportunity to explore the issues involved in this summary judgment. The facts are not in dispute, and as a matter of law the Court holds that the defendants committed willful violations of the automatic stay. Under section 362(h) debtors may recover their attorney fees and costs incurred in pursuing their remedy here. Such fees and costs are to be borne equally among the defendants.

---

**5.** Prior to October 1, 1979 an automatic stay was provided by Bankruptcy Rule 401. However, this rule did not apply to certain nondischargeable debts, including a debt for alimony or maintenance.

The foregoing constitutes the Court's findings of fact and conclusions of law. Debtors are directed to file a statement on the amount of costs and fees to be awarded and a judgment.