**In re Carl W. PATTERSON, Bonnie M. Patterson, d/b/a Patterson's Welding, Debtors.**

**Bankruptcy No. 88–00629.**

United States Bankruptcy Court, N.D. New York.

Oct. 13, 1989.

Richard Croak, Office of U.S. Trustee, Utica, N.Y.

Daniel S. Dickinson, III, Watertown, N.Y., Former Atty., for debtors.

Carl W. Patterson and Bonnie M. Patterson, Watertown, N.Y., debtors pro se.

Mark W. Swimelar, Watertown, N.Y., Trustee.

## MEMORANDUM–DECISION, FINDINGS OF FACT CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

This cause comes before the Court on the motion of the United States Trustee ("UST") to hold Carl W. and Bonnie M. Patterson ("Debtors") in civil contempt for violation of this Court's Order dated January 26, 1989 directing Debtors to file certain documents with the Court and award of monetary sanctions not to exceed $500.00 per day for each day of noncompliance and reasonable costs and attorney's fees to UST not to exceed $350.00.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 1334(a), (b); 157(a), (b)(1), (b)(2)(O) and 11 U.S.C. § 105(a), (c) (West 1979 & Supp. 1989).

## STATEMENT OF FACTS

Debtors filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C.A. §§ 101–1330 (West 1979 & Supp.1987) ("Code") on September 26, 1986. As a result of the UST's motion to dismiss or convert, an Order of Conversion was entered on April 25, 1988.

On October 18, 1988, UST filed a motion, returnable December 20, 1988, pursuant to Bankruptcy Rule ("Bankr.R.") 1019 for an order compelling Debtors to file a) Final Report; b) Schedule of Post–Petition Debts; c) Mailing Matrix; d) Statement of Executory Contracts; e) Statement of Intentions; and f) Schedule of Current Income and Expenses, or face dismissal of the case. That motion went unopposed, although service was made on the Debtors and the Debtors' attorney as required by Bankr.R. 9014 and 7004 and Federal Rules of Civil Procedure ("Fed.R.Civ.P.") 4.

After a hearing, the Court entered an Order dated January 26, 1989, requiring the Debtor to file the necessary documents by February 21, 1989. Certificate of Service by UST indicates that the January 26, 1989 Order was mailed to Debtor's attorney and the Chapter 7 Trustee on January 31, 1989, but no personal service was made upon the Debtors. By way of certified mail, however, Debtors' attorney sent a copy of the January 26th Order to Debtors. The mailing was "unclaimed" by the Debtors and returned to their attorney.

The UST moved on April 20, 1989 to hold both the Debtors and their attorney in contempt due to their failure to comply with the Order of January 26, 1989. Certificate of Service indicates mailing of that motion to Debtors' attorney, Debtors and the Chapter 7 Trustee. Debtors' counsel filed a cross-motion to withdraw due to Debtors' non-cooperation. The Affidavit of Service of that motion indicates that it was mailed

to the UST, Chapter 7 Trustee, and Mr. and Mrs. Carl Patterson at Olive Street and Hamilton Street addresses in Watertown, New York. Both motions were heard on May 23, 1989 in Syracuse, New York.

Debtors' counsel appeared at the May 23, 1989 hearing and attested to repeated difficulty in contacting his clients from May 17, 1988 through February 7, 1989. It is undisputed that the Debtors last communicated with their attorney on July 11, 1988 in response to a letter he sent them on or about June 23, 1988. It is also undisputed that Debtors did not appear at the § 341 meeting of creditors on July 15, 1988 or at the adjourned meetings on September 16, November 18, 1988 or January 20, and March 17, 1989. Debtors' counsel attended all three of the creditors' meetings and has sent a number of letters to the Debtors. The letters sought to inform them of the dates of adjourned meetings, the consequences of a failure to respond and requested that the Debtors contact the attorney. The Debtors have not contacted their attorney or this Court since June 23, 1988. The attorney's repeated efforts to contact the Debtors regarding the January 26, 1989 Order were found to be in earnest and in good faith at the May 23, 1989 hearing. The Court reserved decision on the UST's motion, while granting the motion of Debtors' counsel to withdraw as counsel.

The UST subsequently withdrew that part of his motion directed at Debtors' attorney, so that the instant motion seeks a judgment of contempt solely against the Debtors and its officers.

### ISSUES

Does this Court have civil contempt power?

Must an Order be served on the Debtors personally for them to be held in contempt in the event of their noncompliance?

What are the appropriate sanctions?

### DISCUSSION

■ "The ability to enforce orders and judgment through the contempt power is essential to the orderly administration of justice." *In re Shafer*, 63 B.R. 194, 197 (Bankr.D.Kansas 1986) (citations omitted). This Court has previously stated, in dicta, its position of approval regarding the powers of bankruptcy courts to issue orders of civil contempt. *See In re Sheldrick*, Case No. 87–01123, slip op. at 16–18 & n. 5 (Bankr.N.D.N.Y.1988), *rev'd in part on other grounds, United States of America v. Sheldrick (In re Sheldrick)*, Case No. 89–CV–612, 1989 WL 95603 (Aug. 14, 1989). Other courts have held similarly. *See e.g. Haile v. New York State Higher Education Services Corp.*, 90 B.R. 51, 54 (W.D. N.Y.1988); *Miller v. Mayer (In re Miller)*, 81 B.R. 669, 673–79 (Bankr.M.D.Fla.1988). Such authority is articulated in 11 U.S.C. § 105 wherein it states that the Court may, *sua sponte*, issue any order appropriate to prevent an abuse of process. *Id.* *But see Plastiras v. Idell (In re Sequoia Auto Brokers, Ltd., Inc.)*, 827 F.2d 1281 (9th Cir.1987).

In contrast to criminal contempt sanctions, civil contempt sanctions are intended to compensate parties injured by non-compliance with court orders. *See In re Crabtree*, 60 B.R. 147 (Bankr.E.D.Tenn.1986); *In re McCary*, 60 B.R. 152 (Bankr.N.D.Ill. 1986). Furthermore, awarding contempt sanctions acts as an incentive to encourage future compliance.

■ In a civil contempt proceeding, the query is not focused on the individual's intent. *See In re Sheldrick, supra* at 16 (citing *In re Wagner*, 74 B.R. 898 (Bankr.E. D.Pa.1987; *Kellogg v. Chester*, 71 B.R. 36, 38 (N.D.Tex.1987)). As long as the individual has knowledge of the order, "accidental, inadvertent or negligent conduct can be grounds for imposing civil contempt sanctions, and those sanctions may include attorney fees." *In re Shafer, supra*, 63 B.R. at 198.

Notice to parties of an order of this Court is governed by Fed.R.Civ.P. 5 as referenced in Bankr.R. 9022 and 7005. Fed.R.Civ.P. 5(b) provides therein that notice to a party of entry of an order shall be

served by mail upon that party's attorney "unless service upon the party is ordered by the court" and that service is complete upon mailing (emphasis added). *Id.*

In the present case, there was no directive by the Court calling for personal service of the January 26, 1989 Order on the Debtors. Service was made on Debtors' attorney of record by mail as required by statute.

Debtors' attorney has shown that he has made repeated attempts to make contact with his clients, via mail and telephone, from May 17, 1988 to February 7, 1989. Debtors simply would not respond. Moreover, a review of the record shows that in addition to their failure to contact their attorney, Debtors have made no contact with this Court.

■ The question in the instant case is whether the Debtor who, after commencing a voluntary case and then deciding to discontinue communications with his attorney and the court, can claim lack of knowledge of a subsequently issued order. While one cannot be held in contempt of a court order of which he is not aware, *see Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 51 (2d Cir.1976) *cert. denied* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977), a party involved in on-going litigation does have a duty to keep himself abreast of the progress of that litigation. *See Perfect Fit Ind. v. Acme Qualiting Co.*, 646 F.2d 800 (2d Cir.1981), *aff'd*, 673 F.2d 53 (1982), *cert. denied*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982).

■ The record in the instant case shows that since Debtors commenced their bankruptcy case, they have made absolutely no attempt to keep themselves informed as to the progress of the case. Even more disturbing, is the fact that Debtors, despite any lack of initiative on their part, could have easily kept informed as to its progress by simply answering any one of several letters and/or telephone calls by their attorney. Instead, Debtors have determined to ignore each opportunity they were given to participate in, or at least remain informed about, what was occurring in their case.

There is also an important public policy issue at stake within this proceeding. The Debtors have invoked the broad protections created by Congress by virtue of their initial and unilateral act of filing their petition pursuant to Chapter 11 of the Code. They have denied their creditors and the trustee the opportunity to examine them and have also failed to provide adequate information regarding their post petition activities. The record amply indicates that they simply walked away from their duties as debtors in the face of repeated attempts by their attorney to gain their cooperation. Setting the judicial machinery of bankruptcy in motion and retaining the benefits while at the same time refusing to participate any further in their case taxes the finite resources of the Court and abuses the process created by Congress to enable petitioners to obtain the extraordinary relief intended for those who file in good faith.

In sum, the Court finds that Debtors did have the requisite knowledge that a motion seeking an order of compliance was to be brought before this Court. They knew or should have known that the Order of January 26, 1989 would be issued absent any protest from them or their attorney. Furthermore, notice of the Order provided by the Court fully complied with statutory requirements, and therefore any lack of knowledge on the part of the Debtors is directly attributable to their own conscious choices. Accordingly, the Court finds that the Debtors, with the requisite knowledge, failed to comply with the Order of this Court dated January 26, 1989 and are, therefore, in contempt thereof.

Having concluded that Debtors are in contempt, the Court turns to the reasonableness of the sanctions sought. The UST is seeking monetary sanctions not to exceed $500.00 per day for each day of non-compliance, and reasonable costs and attorney's fees not to exceed $350.00.

In lieu of costs, but in light of the Debtors' total disregard for their statutory duties, the Court will order payment of $1200.00 in estimated quarterly fees due and owing to the UST pursuant to 28 U.S.C. § 1930(a)(6).[1]

The Court denies the relief sought by the UST as to attorney's fees, not because the facts and circumstances of the case do not warrant their award by the Court, but rather because the Court is not aware of any authority that would permit the claiming of attorney's fees *qua* attorney's fees by the UST.

Although the Court is cognizant of decisions imposing substantial "per day fines" on contemners, it is the Court's position that while such fines may be warranted, they would not serve any useful purpose here given the obvious uncertainty as to Debtors' whereabouts and their ability to pay. Given the financial posture of the Debtors, the circumstances and the public policy considerations surrounding the issues at bar, the Court finds the "per day fine" not appropriate in the instant case.

Finally, the Court Orders the case at bar dismissed and as a condition thereof prohibits the Debtors from re-filing a petition pursuant to any Chapter of the Code in a United States Bankruptcy Court until the quarterly fees owed to the UST are fully satisfied by the Debtors.

IT IS SO ORDERED.

---

1. Title 28 U.S.C. § 1930 requires a minimum quarterly fee of $150.00 per quarter. Debtors' case under chapter 11 of title 11 languished for eight quarters before being converted. Absent any actual operating reports the Court has imposed the minimum quarterly fee.