Bruce H: Zuckerman of the law offices of Robert E. Weiss, Inc., Covina, Cal., for Lomas & Nettleton USA, Inc.

**In re Merle ELMORE, Debtor.**

**LOMAS MORTGAGE USA, INC., Movant,**

v.

**Merle ELMORE, Respondent.**

**Bankruptcy No. LAX 85–51356–SB.**

United States Bankruptcy Court, C.D. California.

Dec. 14, 1988.

## OPINION DENYING RELIEF FROM STAY AND SETTING FURTHER HEARING

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I. INTRODUCTION

Creditor Lomas Mortgage USA, Inc. ("Lomas") brings this motion for relief from the automatic stay imposed by Bankruptcy Code § 362, 11 U.S.C. § 362 (1979 & Supp.1988), on the grounds that it lacks adequate protection of its interest in the residence of debtor Merle Elmore ("Elmore"), because of Elmore's failure to make 18 regular monthly mortgage payments after the confirmation of his Chapter 13 plan.

The Court holds that, because the property is not declining in value, Lomas is not entitled to adequate protection of its inter-

est. In consequence, relief from stay on these grounds is denied. However, the Court sets a further hearing to give Lomas an opportunity to seek relief from stay for cause.

## II. FACTS

Debtor Elmore filed this Chapter 13 case on March 14, 1985. Like a substantial majority of Chapter 13 debtors who appear before this Court, Elmore filed this case principally to save his residence from foreclosure. In fact, the only creditors of the estate are Lomas, the Chapter 13 trustee and Elmore's legal counsel in this case.

Elmore's residence in Los Angeles is encumbered by a first deed of trust, recorded on February 9, 1983, given to The Lomas & Nettleton Company, predecessor in interest to Lomas. The deed of trust supports a promissory note in the amount of $62,000, which provides for interest at the rate of 12% per annum, and monthly payments in the amount of $637.98. On the date of filing, the debtor was behind by ten payments to Lomas, and owed arrearages totaling $7,612.80.

At the time of filing of this bankruptcy case, Elmore submitted a Chapter 13 statement, which showed that he had an income of $1,857 per month. The statement further showed that, after the payment of living expenses, $458 were available for the payment of creditors under the plan. The plan provides for the payment of $318.22 per month to the standing Chapter 13 trustee for distribution to the creditors provided for by the plan.

Elmore's Chapter 13 plan was confirmed by the Court on April 29, 1985. The plan provides for the repayment of the arrearages to Lomas over a period of 36 months, with interest on the arrearages at the rate of 12% per annum. The Chapter 13 trust-

ee's records indicate that all of the payments under the plan have now been made: the final payment was made on November 28, 1988.

While Elmore has completed his plan payments to the Chapter 13 trustee, he ceased making monthly mortgage payments in July, 1987 and has failed to make at least 18 post-confirmation mortgage payments. He now owes at least $70,728.41 to Lomas.[1] In fact, the arrearages now owed exceed those at the time that this case was filed.[2] In consequence, Lomas has brought this motion for relief from stay, based on lack of adequate protection.

At the hearing on this motion, Elmore offered to pay $5,000 toward the arrearages. This is apparently more than $9,000 short of the payments required to bring current the postpetition arrearages.

## III. ANALYSIS

The filing of a bankruptcy case creates an estate, which is comprised of all legal and equitable interests of the debtor in property as of the commencement of the case (with certain exceptions not relevant in this case). Bankruptcy Code § 541(a), 11 U.S.C. § 541(a) (1979 & Supp.1988). In a Chapter 13 case, this estate also includes all such property acquired during the pendency of the case, and the debtor's earnings from services performed during the pendency of the case. Bankruptcy Code § 1306(a), 11 U.S.C. § 1306(a) (Supp.1988). Elmore's residence, which is at issue in this motion for relief from stay, came into this estate when Elmore filed this bankruptcy case.

The filing of a bankruptcy case also imposes against all creditors an automatic stay under Bankruptcy Code § 362, 11 U.S.C. § 362 (1979 & Supp.1988), which prohibits essentially all debt enforcement

---

1. The declaration supporting this motion for relief from stay was signed on October 24, 1988, and does not cover the November and December, 1988 payments. These payments (including a late charge for November) total $1,442.28, and presumably have not been made.

2. This case illustrates the difficulty of determining the success of a Chapter 13 plan. Although

Elmore has made all of the payments to the Chapter 13 trustee required by the plan, and the trustee has made all disbursements, Elmore is now more indebted to his only prepetition creditor than he was on the date of filing, almost four years ago. This illustrates one of several ways that a Chapter 13 plan may fail, that may not appear in the Court's record.

actions against the debtor or property of the estate. The relevant portion of section 362(a) states:

> Except as provided in subsection (b) of this section, a [bankruptcy] petition ... operates as a stay, applicable to all entities, of—
>
> .    .    .    .    .
>
> (4) any act to create, perfect, or enforce any lien against property of the estate;
>
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title....

Section 362(b) provides thirteen exceptions to the automatic stay. Lomas does not claim the benefit of any of these exceptions, and none appears to be applicable. Thus when Elmore filed this case, section 362(a) stayed the action of Lomas to foreclose its security interest in Elmore's residence.

The automatic stay is one of the fundamental debtor protections provided by the Bankruptcy Code, and takes effect at the moment of filing of the bankruptcy petition. *Watson v. City National Bank (In re Watson)*, 78 B.R. 267, 269–70 (Bankr.C. D.Cal.1987); *In re Stucka*, 77 B.R. 777, 782 (Bankr.C.D.Cal.1987); *In re Davis*, 74 B.R. 406, 410 (Bankr.N.D.Ohio 1987). Its purpose is to give the debtor a breathing spell from the debtor's creditors. It stops all collection efforts, all foreclosure actions, and all harassment against a debtor. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6296–97.

Lomas claims entitlement to relief from the automatic stay imposed by section 362(a). Relief from stay is authorized by section 362(d), which provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

In substance, section 362(d) permits relief from stay for foreclosure on real estate on two grounds: (1) no debtor equity in property unnecessary for an effective reorganization, and (2) "cause". Cause may consist in a lack of adequate protection, or may arise for other reasons.

Before examining whether Lomas qualifies for relief from stay under section 362(d), the Court must consider whether such relief is necessary in light of the limits on the duration of the automatic stay.

### A. Duration of Automatic Stay

Section 362(c) provides for the automatic termination of the automatic stay. It states:

> Except as provided in subsections (d), (e), and (f) of this section—
>
> (1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; and
>
> (2) the stay of any other act under subsection (a) of this section continues until the earliest of—
>
> (A) the time the case is closed;
>
> (B) the time the case is dismissed; or
>
> (C) if the case is a case under chapter ... 13 of this title, the time a discharge is granted or denied.

In a Chapter 13 case property such as a debtor's residence remains property of the estate until it revests in the debtor. The timing for revesting in the debtor of property of the estate in a Chapter 13 case is provided in Bankruptcy Code § 1327(b), 11 U.S.C. § 1327(b) (1979), which states:

Except as provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.[3]

The Chapter 13 plan in this case delays revesting of the property of the estate in the debtor until the entry of the discharge after the completion of plan payments.[4] Although Elmore has completed the plan payments in this case, the Chapter 13 trustee has not yet submitted the discharge order to the Court. Thus Elmore's residence is still property of the estate, and subject to the automatic stay of section 362(a)(4).

### B. Adequate Protection

Lack of adequate protection of a creditor's interest in property is a species of "cause" for relief from stay under section 362(d)(1). Lomas brings this motion for relief from stay based upon lack of adequate protection of its interest in Elmore's property. Lomas complains that Elmore has not made the payments required by the promissory note.

### 1. United Savings Case

The extent to which a secured creditor is entitled to adequate protection of its interest in a debtor's property has been recently elucidated by the United States Supreme Court in *United Savings Association v. Timbers of Inwood Forest*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), where the Supreme Court held that an undersecured creditor whose security is not depreciating is not entitled to adequate protection in a Chapter 11 case prior to the confirmation of a plan of reorganization. While *United Savings* was a Chapter 11 case, and not a Chapter 13 case such as the one before this Court, the Supreme Court's analysis is instructive.

*United Savings* involved a debtor who executed a note secured by a security interest encumbering an apartment project in Texas. Nearly three years following execution of the note, the debtor filed a voluntary petition under Chapter 11. The creditor immediately moved for relief from the automatic stay under section 362(d)(1) on the grounds of a lack of adequate protection of its interest. The collateral was appreciating slightly in value, but the creditor was undersecured. Although the debtor agreed to pay the creditor the net rents after operating expenses, the creditor wanted additional compensation as adequate protection for the delay in foreclosing upon its collateral resulting from the automatic stay. The bankruptcy court conditioned continuance of the automatic stay on the payment of current property taxes, and on monthly payments to the creditor at the market rate of 12% per annum on the amount the creditor would have realized at foreclosure. The Court of Appeals for the Fifth Circuit en banc reversed, and the Supreme Court affirmed the Fifth Circuit's judgment that an undersecured creditor is not entitled to interest on its collateral for the additional delay in foreclosure caused by the automatic stay. 108 S.Ct. at 628–629.

In a unanimous decision, the Court based its result in *United Savings* on an analysis of several provisions of the Bankruptcy Code. After noting the statutory provisions on adequate protection, the Court found that both parties agreed on two points of law: (1) the "interest in property" that is entitled to adequate protection includes a secured creditor's right to have the security applied in payment of the debt upon completion of the reorganization; and (2) this interest is not adequately protected

---

**3.** Foreclosure by a junior lienholder or abandonment of the property by the debtor also removes property from the estate, and terminates the automatic stay as to acts against such property.

**4.** If the property is revested in the debtor at the time of confirmation, the automatic stay of section 362(a)(4) is replaced with that of section 362(a)(5). This stay continues until the first of

the following: (1) grant or denial of discharge; (2) dismissal of the case; (3) closing of the case. In a case where a debtor completes the plan payments, the grant or denial of discharge after the completion of payments is normally the triggering event for termination of the stay. The result is the same as that in this case, where revesting is delayed until the entry of the discharge.

if the security is depreciating during the term of the stay.

The parties disagreed on whether the interest in property also included the secured party's right to take immediate possession of the security, in consequence of the prepetition default, and to apply it in payment of the debt. The adequate protection of this right would require reimbursement for the use of the proceeds during the delay caused by the automatic stay.

The Court began its analysis by considering section 506, 11 U.S.C. § 506 (1979 & Supp.1988), under which a secured claim is limited by "the value of such creditor's interest" in the collateral. The Court drew three conclusions from its analysis of section 506. First it determined that the phrase "the value of such creditor's interest" in section 506(a), and the similar phrase "the value of such entity's interest in such property" in section 361, both mean "the value of the collateral".[5] 108 S.Ct. at 630; cf. Wright v. Union Central Life Insurance Co., 311 U.S. 273, 278, 61 S.Ct. 196, 199, 85 L.Ed. 184 (1940) (Bankruptcy Act protected rights of secured creditors to the extent of the value of the property). Second, the Court found that the phrase "interest in property," referred to in sections 361, 362(d)(1) and 506(a), uniformly means a secured creditor's security interest without taking into account the creditor's right to immediate possession of the collateral on default. 108 S.Ct. at 630. Third, the Court analyzed section 506(b) to permit the payment of postpetition interest only out of the "security cushion," which is available only to an oversecured creditor. Id. at 630–31.

The Court also noted that section 552 encumbers postpetition rents only to the extent that the creditor has a perfected security interest in the rents. Since rents reflect the use value of collateral, it would be inconsistent with section 552 to compensate the undersecured creditor who lacks a perfected security in rents for the loss of

use of collateral. 108 S.Ct. at 631–632. The Court also reasoned that the compensation of undersecured creditors for the delay caused by the automatic stay would render section 362(d)(2), another provision of the automatic stay, "a practical nullity and a theoretical absurdity" since it would only apply to a creditor who was receiving a market rate of interest and whose collateral was not depreciating. 108 S.Ct. at 632.

The Court's conclusion that an undersecured creditor is not entitled to compensation for the delay in foreclosure caused by the filing of a Chapter 11 bankruptcy case followed from these premises.

### 2. Distinctions

Two significant differences between this case and *United Savings* are apparent. First, Lomas is oversecured, whereas the moving creditor in *United Savings* was undersecured. Second this is a Chapter 13 case, instead of a case under Chapter 11.

#### 1. Lomas is Oversecured

A narrow reading of *United Savings* would limit its application to the entitlement of an undersecured creditor to adequate protection payments. However, the reasoning of the Supreme Court is not narrowly drawn. This Court finds the Supreme Court's analysis of adequate protection to cover oversecured creditors, as well as those that are undersecured. While the outcome may be different, the analysis must begin with the statutory interpretation given by the Supreme Court.

#### 2. This is a Chapter 13 Case

The second distinction between this case and *United Savings* is more important. This is a case under Chapter 13 of the Bankruptcy Code, while *United Savings* was a Chapter 11 case.

---

5. *See, generally,* O'Keefe, "Adequate Protection After *United Savings v. Timbers of Inwood Forest,*" 16 Cal.Bankr.J. 8 (Fall 1988); Klee, "Timbers, Ahlers & Beyond," *62nd Annual Meeting of the National Conference of Bankruptcy Judges*

413 (1988). If the debtor does not have complete ownership of the collateral, the value of the creditor's interest is limited to the value of the estate's interest in the collateral.

Chapter 13 of the Bankruptcy Code is quite like Chapter 11 in a number of respects. Both Chapter 11 and Chapter 13 are designed for the restructuring of debtor-creditor relations, and contemplate the payment of most debts, in whole or in part, over a period of time. Under both chapters a debtor brings a plan of reorganization before the court, after its review by creditors, for confirmation. A confirmed plan under both chapters establishes a new regime between the debtor and the creditors.

However, there are substantial differences between Chapter 11 and Chapter 13. Chapter 11 is designed for the reorganization of a business, which may have complex legal and financial structures, and may require a substantial restructuring to permit the reorganization of its debt and business affairs. Chapter 13 is designed for an individual debtor like Elmore, and eliminates many of the complexities of Chapter 11 that are unnecessary for a consumer debtor.

A Chapter 11 plan is normally a consensual plan, that is approved after the affirmative vote of the requisite number of interested parties with the requisite amount of claims or interests, as provided by Bankruptcy Code § 1129(a), 11 U.S.C. § 1129(a) (1979 & Supp.1988). While section 1129(b) permits the confirmation of a Chapter 11 plan over the objection of one or more classes, this provision is infrequently invoked.

In contrast, a Chapter 13 plan is a non-consensual plan, somewhat like a Chapter 11 plan under section 1129(b). Objecting creditors are given an opportunity to be heard before confirmation is decided. However, confirmation is determined by the court without taking a vote of creditors or otherwise soliciting their approval: all Chapter 13 plans are "cram-down" plans.[6]

A further significant difference between Chapter 11 and Chapter 13 is the time frame within which confirmation typically occurs. This difference is important for relief from stay purposes. In this Court's experience, Chapter 11 plans are often not ready for confirmation within a year after a Chapter 11 case is filed, and frequently it takes two or three years after the filing of the case to prepare a viable plan. In contrast, Chapter 13 confirmation hearings typically are scheduled approximately 40 days after the filing of the case, and any extra time to prepare for confirmation is relatively short. In this case, for example, the plan was confirmed 46 days after the case was filed. In consequence, the vast majority of Chapter 13 relief from stay motions, including the one before the Court, are brought after plan confirmation.[7]

In consequence, this case (and most Chapter 13 cases at the time of relief from stay motions) is in quite a different posture from the Chapter 11 case in *United Savings*. While in *United Savings* a reorganization plan had not been proposed, in this case a plan has been confirmed. One of

**6.** Bankruptcy Code § 1325(a)(5)(A), 11 U.S.C. § 1325(a)(5)(A) (1979), permits the holder of a secured claim to accept (and presumably also to reject) a Chapter 13 plan. If a secured creditor accepts the plan, the Chapter 13 version of the "fair and equitable" standard need not be satisfied with respect to such a creditor. *Cf.* Bankruptcy Code § 1129(b)(2)(A), 11 U.S.C. § 1129(b)(2)(A) (1979 & Supp.1988). In short, there is no cram-down of a Chapter 13 plan in respect to a secured creditor that accepts the plan.

However, acceptance of a Chapter 13 plan by a secured creditor is infrequent, because there is no procedure for soliciting such acceptances. In practice all creditors, secured and unsecured, are treated the same: the plan (or a summary thereof) is served on them, and they are given an opportunity to object to the plan, and to be heard in opposition to confirmation. The principal issue raised by an objection is usually whether the arrearages are stated accurately in the plan, which is one of the cram-down issues under section 1325(a)(5)(B)(ii).

**7.** Approximately ten percent of this Court's Chapter 13 relief from stay motions arise shortly after the filing of Chapter 13 cases by debtors whose landlords have obtained judgments against them for possession of residential real property. Such debtors rarely seek relief from any other debts. In this Court's view, these cases do not belong in the bankruptcy system, and the Bankruptcy Code should be amended so that tenants in these circumstances do not obtain an automatic stay. The Court considers these cases to be bad faith cases, and they are ignored in this opinion.

the reasons to deny adequate protection payments in *United Savings* was to put pressure on the secured creditor to participate in the negotiation of a plan, by requiring it to bear some undetermined amount of the reorganization costs. *See* 108 S.Ct. at 634. In contrast, in this case the plan has been finalized and confirmed, and it determines the reorganization costs that Lomas must shoulder. The restriction of section 506(b), that limits a secured creditor to collecting interest from the equity cushion, also terminates at confirmation, and is replaced with the provisions of the plan of reorganization with respect to the payment of such interest.

However, none of these differences affects the value of Lomas' collateral in this case. *United Savings* teaches that only this value is entitled to adequate protection.

### 3. Contract Rights vs. Property Interests

The bundle of rights that a consensual secured lender receives from a borrower divides into two parts. First, the creditor receives a contract, consisting in a promissory note and often other contractual undertakings from the debtor. Second, the creditor receives a property interest[8] in collateral to secure the contractual obligations of the debtor. A creditor's interest in real property is usually a mortgage or a trust deed; for personal property it is usually a security interest under the Uniform Commercial Code. In this case Lomas' property interest is a trust deed.

This property interest distinguishes a secured creditor from an unsecured creditor. The value of a secured creditor's property rights lies chiefly in the creditor's ability to require the sale of the property through foreclosure to pay the indebtedness, if the debtor does not pay it voluntarily.[9] A se-

cured creditor has no property right in proceeding to foreclosure immediately upon a debtor's default. *United Savings*, 108 S.Ct. at 630.

The adequate protection requirements recognized in the Bankruptcy Code derive from the fifth amendment protection of property interests of both debtors and creditors. *In re Johnson*, 90 B.R. 973, 979 (Bankr.D.Minn.1988); *see, also, Wright v. Vinton Branch of Mountain Trust Bank*, 300 U.S. 440, 470, 57 S.Ct. 556, 565, 81 L.Ed. 736 (1937); *see generally* H.R.Rep. No. 595, 95th Cong., 1st Sess. 339, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6295. The fifth amendment has two separate clauses that protect property rights. First, it provides: "[N]or shall any person ... be deprived of ... property, without due process of law...." Second, it also provides: [N]or shall private property be taken for public use without just compensation." Both of these clauses underlie the adequate protection requirements. The Bankruptcy Code generally permits a debtor to reorganize his or her debts, so long as property rights protected by the fifth amendment are respected.

The filing of a bankruptcy case modifies state procedural requirements for foreclosure, chiefly by delaying a creditor's exercise of its foreclosure rights. A creditor's property rights are diminished to the extent that it cannot recover interest to compensate for the delay. However, a delay in the liquidation of valuable property rights does not involve a "taking" that requires compensation. *Agins v. City of Tiburon*, 447 U.S. 255, 263 n. 9, 100 S.Ct. 2138, 2143 n. 9, 65 L.Ed.2d 106 (1980). It also does not violate due process of law, so long as the delay is not unreasonable, or provision is made for the adequate protection of property rights.

---

**8.** "Property" is construed in its narrower sense in this context, and means those rights that cannot be taken for public use without the just compensation required by the fifth amendment to the United States Constitution. *See, generally,* Oakes, "Property Rights in Constitutional Analysis Today," 56 *Wash.L.Rev.* 583, 588–90 (1981).

**9.** A second property right of a secured creditor is the exclusion of other creditors from sharing in the proceeds of the sale of the creditor's collateral, except to the extent of any surplus after the secured creditor is paid in full.

In contrast to property rights, contract rights are subject to broad impairment under bankruptcy law. *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589, 55 S.Ct. 854, 863, 79 L.Ed. 1593 (1935). Congress, unlike the states, is not constitutionally prohibited from impairing the obligation of contracts. *Id.* Indeed, the rights of both debtors and creditors in bankruptcy result in large part from the impairment of contract rights. The contract rights that Congress is permitted to impair include a creditor's right to the payment of principal or interest, which derive from a promissory note. The security interest includes no right to such payment, except at the end of the bankruptcy case. A creditor's contract rights are not entitled to adequate protection under the Bankruptcy Code. As the Ninth Circuit has declared, "Congress may, within its constitutional limitations, abrogate state law entitlements in bankruptcy pursuant to its bankruptcy clause power...." *California v. Farmers Markets (In re Farmers Markets)*, 792 F.2d 1400, 1403 (9th Cir.1986).

A creditor's security interest is not adequately protected if the collateral is declining in market value during the term of the automatic stay. *Id.; In re Anderson*, 88 B.R. 877, 890 (Bankr.N.D.Ind.1988); *but see In re Johnson*, 90 B.R. 973, 978–80 (Bankr.D.Minn.1988) (short-term drop in market price of publicly traded shares of stock given little weight in determining their value). Thus, if Lomas is oversecured and Elmore's home is declining in value, Lomas may be entitled to adequate protection, which may take the form of cash payments or additional security as described in section 361.

No party before the Court has suggested that Elmore's residence is declining value. Lomas has the burden of raising this issue as part of its prima facie case. *See In re Kim*, 71 B.R. 1011, 1015–17 (Bankr.C.D.Cal.1987). Because Lomas has not offered any evidence on this subject,

the Court finds that the property is not depreciating in value.

In consequence, the Court finds that Lomas is adequately protected by the value of its collateral, Elmore's residence. Lomas has no property right in the monthly payments that is entitled to adequate protection under the Bankruptcy Code. *Accord, In re Anderson*, 88 B.R. 877, 891 (Bankr.N. D.Ind.1988) (Chapter 12 case). The right to receive payments is a simple contract right, that supports only a claim in the bankruptcy case. There is no other adequate protection to which Lomas is entitled under the Bankruptcy Code. To the extent that this Court found to the contrary in *In re Kim*, 71 B.R. 1011, 1014 (Bankr.C.D.Cal. 1987), that opinion is overruled.

### C. Section 362(d)(2)

Section 362(d) provides two separate grounds upon which relief from stay may be sought. If relief from stay is not available under section 362(d)(1), it may be sought on the alternative grounds provided in section 362(d)(2). To obtain relief from stay under section 362(d)(2), a creditor must present evidence to make a prima facie case that (1) the property is overencumbered, and (2) it is not necessary to an effective reorganization.

A debtor's principal residence in a Chapter 13 case is virtually always necessary to an effective reorganization. The vast majority of Chapter 13 cases filed in this district are filed by debtors like Elmore who are trying to save their homes. If the home is not saved, the Chapter 13 reorganization is not effective. Thus a secured creditor rarely qualifies for relief from stay under section 362(d)(2) in a Chapter 13 case.[10]

In consequence, the Court is not usually called upon in a Chapter 13 relief from stay motion to consider whether the debtor has any equity in the property. If an effective reorganization is in prospect, a Chapter 13 debtor is permitted to keep the automatic

---

**10.** In the rare case where confirmation of the Chapter 13 plan is delayed for an extended period of time, a secured creditor may qualify for relief from stay under section 362(d)(2) on the grounds that no effective reorganization is in prospect within a reasonable period of time. *See United Savings*, 108 S.Ct. at 632.

stay as to the residence or any other real property even though the debtor has no such equity,[11] unless there is cause to lift the stay.

Lomas has not sought relief from stay under section 362(d)(2) in this case.

### D. Other "Cause"

In addition to the lack of adequate protection, section 362(d)(1) permits relief from stay for other "cause". Such other cause is not defined in the Bankruptcy Code.[12] This cause should provide the usual basis for relief from stay in a Chapter 13 case after the confirmation of a plan.

Once a plan of reorganization is confirmed by the court, under Chapter 13 as well as Chapter 11, the plan governs the property and contract rights between the debtor and the creditors. Bankruptcy Code § 1327(a), 11 U.S.C. § 1327(a) (1979), provides, "the provisions of a confirmed plan bind the debtor and each creditor...." As the Supreme Court stated in *United Savings:*

> The reorganized debtor is supposed to stand on its own two feet. The debtor in process of reorganization, by contrast, is given many temporary protections against the normal operation of the law.

108 S.Ct. at 634.

Elmore's Chapter 13 plan provides that "regular payments shall be made" to Lomas during the life of the plan. The failure to make the regular monthly payments to a secured creditor is ordinarily a material default under a confirmed Chapter 13 plan, and gives rise to several possible remedies. Bankruptcy Code § 1307(c)(6), 11 U.S.C. § 1307(c)(6) (Supp.1988), authorizes the court to dismiss a case or to convert it to a case under Chapter 7, whichever is in the best interest of creditors and the estate, for such material default.

■ The failure to make the regular monthly payments to a secured creditor as required by a confirmed Chapter 13 plan may also be cause for relief from stay. *See, e.g., Ellis v. Parr (In re Ellis),* 60 B.R. 432, 435 (Bankr. 9th Cir.1985); *In re Heath,* 79 B.R. 616, 617–18 (Bankr.E.D.Pa. 1987). The cause is the material breach of a term of the plan, and not the lack of adequate protection. A post-confirmation motion for relief from stay in a Chapter 13 case should normally be based upon this type of cause, the failure to make the regular monthly payments to the secured creditor as required by the confirmed Chapter 13 plan.

The failure to make 18 monthly mortgage payments to Lomas after confirmation of the Chapter 13 plan would provide such cause. However, Lomas does not base its motion for relief from stay on these grounds.

### E. Remedy for Late Debtor Payments

Frequently a creditor files a motion for relief from stay in a Chapter 13 case, and the debtor responds by tendering the missing payments. Such payments restore the creditor to the position where it should have been, and cure the debtor's default under the confirmed plan.

---

11. The lack of equity may have an impact, however on whether an effective reorganization is possible, or what shape it should take.

12. The House Report for the Bankruptcy Code suggests several circumstances, apart from the lack of adequate protection, that may provide cause for relief from stay:

> [A] desire to permit an action to proceed to completion in another tribunal may provide another cause. Other causes might include the lack of any connection with or interference with the pending bankruptcy case. For example, a divorce or child custody proceeding involving the debtor may bear no relation to the bankruptcy case. In that case, it should not be stayed. A probate proceeding in which the debtor is the executor or administrator of another's estate usually will not be related to the bankruptcy case, and should not be stayed. Generally, proceedings in which the debtor is a fiduciary, or involving postpetition activities of the debtor, need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors.

> H.R.Rep. No. 595, 95th Cong., 1st Sess. 343, *reprinted in* 1978 U.S.Code Cong. & Admin. News 5963, 6300. The report further notes, "The facts of each request will determine whether relief is appropriate under the circumstances." *Id.*

Unless the court provides some kind of remedy for a secured creditor in consequence of a debtor's default, followed by a cure after a motion for relief from stay is filed, a financially stretched debtor has little incentive to continue to make timely payments, and may force a secured creditor to make repeated but ineffective motions for relief from stay. In effect such debtor conduct turns the bankruptcy court into a collection agency for the secured creditor.

This Court and other courts have responded to this problem in the past by issuing orders for "adequate protection", which typically require a debtor to make the payments promptly, and authorize a secured creditor to obtain a hearing on a further relief from stay motion on substantially shortened notice. This Court permits such hearings on a weekly calendar upon notice of four court days (typically six calendar days). *See* Local Bankruptcy Rule 113(2).

Because the Court finds that secured creditors are not entitled to adequate protection unless the value of their security is declining, such orders may no longer be based on a right to adequate protection.

Hereafter such an order should be designated as a modification of the automatic stay, authorizing further relief on shortened notice. If the order requires that certain payments be made by the debtor, this should be reflected in the caption also. Such a designation reflects the substance of such an order, which principally provides accelerated procedural remedies to a secured creditor upon further material breach of the confirmed Chapter 13 plan by the debtor.

### F. Partial Payment Offer

Elmore has offered to pay $5,000 toward the missing post-confirmation mortgage payments. He most likely intends this offer to cover the November and December, 1988 payments, which total $1,442.28. Thus $3,557.72 would be applied toward the postpetition arrearage of $13,235.04, leaving a postpetition balance of $9,677.32.

This balance would still be larger than the arrearages owing at the time that this case was filed. The Court finds this offer insufficient. As the Supreme Court stated, Elmore is supposed to stand on his own two feet as a reorganized debtor. *United Savings*, 108 S.Ct. at 634. His failure to make his monthly mortgage payments is a material breach of his Chapter 13 plan, which his partial payment offer does not cure.

### IV. CONCLUSION

The Court denies the motion for relief from stay, because Lomas does not lack adequate protection. However, because the evidence offered to the Court indicates that Lomas may have other cause for relief from stay, the Court sets a further hearing on January 11, 1989 at 10:30 a.m., for Lomas to move for relief from stay for cause, on the grounds that Elmore has materially breached his Chapter 13 plan through his failure to make his regular mortgage payments required by the plan.